## SELDEN *v.* CASHMAN *et al.*

EXEMPLARY or vindictive damages cannot be recovered for a trespass not malicious
in its character.

Where C., acting under the advice of attorneys, had obtained a judgment against
H., which was void by reason of a want of jurisdiction of the person of H.,
and in ignorance of the invalidity of the judgment, caused execution to be
issued and levied upon the interest of H. in a partnership of which he was a
member, and there were no extraordinary circumstances indicating malice
attending the seizure or the subsequent proceedings under it: *Held*, in an action
against C. by the partner of H., for the injury sustained by the levy, that
exemplary damages could not be recovered.

Where, upon a certain point in a case, there is no evidence, or only such slight
evidence as is plainly insufficient to establish it, it is proper for the Court to
instruct the jury to that effect, and withdraw the point from their consideration.

Selden *v.* Cashman.

Thus, where in an action of trespass—plaintiff having attempted to prove malice and a willful effort to injure on the part of defendants, with a view of claiming vindictive damages—the Court, on its own opinion of the insufficiency of the evidence, instructed the jury that malice was not proved, and that they could not therefore find exemplary damages : *Held,* that the instruction was proper —the character of the proofs warranting it.

Damages for a trespass, where there is no malice, must be limited to the direct and natural consequences of the act, and must also be such as are susceptible of computation.

Loss sustained by a mercantile firm—from the seizure of their property—in the diminution of their business, and its consequent profits, subsequent to the release of the property from the seizure, is not an element of damage susceptible of computation with any reasonable degree of accuracy, and evidence concerning it is properly excluded from the jury.

Appeal from the Sixth Judicial District.

On the twenty-first of December, 1857, respondents Cashman and Sullivan, who were merchants transacting business in the city of San Francisco, commenced an action in the Fourth District Court of that city, for goods sold and delivered, against Moses Harris, S. Seigman and John Doe Harris, whose real given name plaintiffs alleged to be unknown, and prayed to insert when known, doing business under the firm name of Harris & Seigman. Summons was duly issued thereon, and by the Sheriff returned "not served" through inability to find any of the defendants. Afterwards, on the second of March, 1858, the attorney for Sullivan and Cashman made an affidavit for an order of publication, setting forth the return of the summons unserved, etc. In this affidavit he entitled the cause " *C. D. O. Sullivan and William Cashman* v. *Moses Harris, S. Seigman and William Harris.*" By what authority the name of William Harris was substituted for that of John Doe Harris does not appear.

Upon this affidavit, the Court made an order for publication of summons in the cause, which order was entitled *C. D. O. Sullivan* v. *Moses Harris et al.* Thereupon, the publication of the summons was made for the prescribed time, the published summons being addressed to Moses Harris, S. Seigman and William Harris. On the twenty-first of June, 1859, judgment was entered in said cause against Moses Harris, S. Seigman and William Harris. This judgment was entitled " *William Cashman and C. D. O. Sullivan* v.

*Moses Harris, S. Seigman, and William Harris* sued under the name of John Doe Harris." It appears that Cashman had, some three or four months before entering his judgment, ascertained that a firm of William Harris & Co., composed of one William Harris and appellant, E. C. Selden, was doing business in Sacramento. Supposing this William Harris to be the party named in the publication affidavit of his attorney, he proceeded to Sacramento to inquire into his responsibility, and consulted an attorney, F. Hereford, in reference thereto. Hereford told him that, by virtue of a decision of this Court, he was entitled, under judgment against William Harris, to levy upon the interest of that person in the firm of William Harris & Co. Cashman represented to Hereford that he then held a judgment against William Harris and others, and requested Hereford to inquire into the business of the firm, and ascertain if the money could be made. After a lapse of three or four months, Hereford wrote to him to send up the execution. Cashman thereupon procured the judgment to be entered as before stated, to wit—on the twenty-first of June, 1859—and immediately sent up the execution to the Sheriff of Sacramento, who, on the twenty-fourth of June, 1859, levied on all the goods, wares and merchandise of William Harris, and appellant E. C. Selden, and closed their store.

Under the levy, the property was held in custody for about a week, during which time the store remained closed and the business of the firm suspended. Harris' interest in the property was then sold by the Sheriff at auction, and bought in for Harris and Selden for a nominal amount, although really of much value.

Upon the eighth of July, 1859, Harris applied by motion to set aside the judgment which had been rendered against him, and upon a plain showing that he was not the person intended to be sued, and had no connection with the subject matter of the action, by consent of plaintiff's attorneys the motion was granted.

The present action is brought by E. C. Selden to recover from Cashman, Sullivan and the Sheriff who made the levy, damages for the injury sustained by him by the levy upon the firm property of himself and Harris, and its detention and sale; the complaint averring that he sustained great loss in the injury done to his business

Selden *v.* Cashman.

and to his credit, and in the diminution of the profits of his trade during the existence of and subsequently to the levy; and averring also, that defendants were actuated by malice in making the levy, and made the same without having any reason to suppose that the judgment against plaintiff's partner, Harris, was valid.

Defendants, in their answer, justify under the judgment and execution, and aver that they acted in good faith, in the full belief that the judgment was just and legal.

The principal question upon the trial was as to the malice of defendants, and whether their conduct had been such as to entitle the plaintiff to recover exemplary damages.

The evidence mainly relied upon by plaintiff on this point, is as follows:

Haswell, Deputy Sheriff, says: "I was at the store of William Harris & Co. very shortly after the levy was made, etc. Cashman (defendant) was there, and instructed me to levy on the horse and wagon belonging to the firm in addition to the goods, and I did so. He also instructed me to keep the property as secure as possible." Again: "Before they (the books of account) were locked up, I allowed defendant, Cashman, to examine them." And again: "Plaintiff was there, and called my attention to the fact that Cashman was examining them, (the books of the firm) and complained. I replied that I supposed Cashman to be a partner, and on my learning that he was the execution creditor, I took the books from him." And again: "The store was closed under the execution. Cashman was present when I was there. Selden (plaintiff) came several times to inquire about the books and demanded them, but they were refused."

Another witness, Hastings, the Sheriff's keeper, testifies: "One man called to pay the firm money, but I did not receive it, having no authority. Plaintiff remonstrated against closing the store at the beginning. Cashman (defendant) was there. No attention was paid to plaintiff's objection." Again: "There were no goods sold during the seven days, nor any business done. At the Sheriff's sale I was present, as also Cashman. He inquired of me while we were taking an inventory, how the goods were turning out. He passed the store, I think, almost every day. Once or twice he

inquired how the stock was turning out. Several persons came there during the time I was there, and wanted to buy. Selden frequently remonstrated against the closing of the store. No attention was paid to his remonstrance." Again: "Selden, the plaintiff, at first had access to the books; he was subsequently refused, because Manlove, the Sheriff, came down to the store while Selden was looking at the books by permission of Under Sheriff Baker. Manlove came in and took them from him and ordered them locked up."

Another witness, G. H. Cushing, testified: "I was present when Selden asked Manlove for permission to see the books; he demanded permission, and Manlove (the Sheriff) said he was indemnified, was carrying out instructions from Cashman and Sullivan, (defendants) as I understood him, and refused." Again: "I was present when Selden made a direct appeal to Cashman to let the business go on. He said it was a hard case for him; that he knew nothing about the suit against William Harris; that Harris was away; that he (Selden) didn't know that Harris owed anything, or that there were judgments against him; that he (Selden) was an innocent party, and that the levy, if it continued, would break him up. Cashman replied, that he would have to go on and get his pay; he was able to respond to any damage they might get against him. Selden made a proposition to Cashman to have a receiver appointed to take charge of Harris' interest, or to take from him (Selden) a bond of indemnity sufficient to indemnify him for his rights in the premises, or to let some suitable person be put in charge of Harris' interest, to take care thereof, so as to let the business go on, but Cashman refused all these propositions."

Another witness, William May, testifies: "At the sale under the levy, defendandat Cashman was present. Mr. Hyer, plaintiff's attorney, forbade the sale. Cashman ordered it to go on, notwithstanding. I saw Cashman one day overhauling the books."

Another witness, J. O. Coursen, testifies: "The books were taken to the Sheriff's office. I went for them, as plaintiff's agent, and asked for them in the name of plaintiff. Cashman and Baker, Under Sheriff, were examining them. I demanded that they should be returned, but they (that is, Cashman and Baker) refused to

give them up. I did not get them until I procured counsel, Mr. Hyer. We then demanded the books, and they were returned to the store."

Jesse Morrill, says: "I was present at the time the levy was made. Defendant Cashman and the Sheriff were also present. Plaintiff asked Cashman by what authority the levy was made. Cashman replied, on an execution against William Harris. Plaintiff said there could not be anything sold until after the partnership debts were paid, and that he did not know that Harris owed anything. Cashman thereupon told the Sheriff to go on and do his duty, to take possession and close up the store, and that they, defendants, would be responsible; that their house was responsible for anything they ordered there done. Selden said he did not want the store closed up; he would give good bonds so that defendants should not go on and close up the store and ruin him. Cashman would not consent to take any bonds. He insisted upon having the store closed. He would not hearken to any proposition at all from Selden, but directed the Sheriff to close the store. I was at the store probably every day between the levy and the sale. During that time, a number of persons came to make purchases. They could not get anything." And again: "Cashman told the Sheriff to take charge of the store and see that nothing went out."

Evidence was also introduced, showing that the business of plaintiff was materially injured by the levy and closing up of the store; that his credit was impaired, and that for several months the effects were felt in a loss of trade.

Plaintiff offered evidence tending to show the probable difference between the profits of his business for the ten months succeeding the levy, and the profits which would have been realized had no interruption of his business by the levy taken place. On defendants' objection that these damages were too remote, the Court excluded the evidence, to which plaintiff excepted.

On this point, however, the witness, Cushing, testified, without objection, that at the time of the levy, plaintiff's firm was doing a business of $3,500 to $4,500 a month; that the profit thereon was thirty-three and one-third per cent., or one-third of the amount; and that during the first month after their resumption, the business

was reduced to one-fourth or one-fifth of what it had been, and did not finally recover until about nine months afterwards.

Plaintiff asked the Court to instruct the jury :

" 1. That if, in their opinion, the defendants acted wantonly, under the evidence, they can give vindictive damages.

" 2. That if, in the opinion of the jury from the evidence, the defendants acted either wantonly or oppressively, or with gross negligence of plaintiff's rights, they can give exemplary damages.

" 3. That if, in the opinion of the jury from the evidence, the defendants acted either wantonly, maliciously or with gross negligence of plaintiff's rights, or oppressively, the jury can give consequential damages.

" 4. That the jury can determine from the evidence whether defendants acted either wantonly, oppressively or with gross negligence of plaintiff's rights, or maliciously."

These instructions were refused by the Court, and plaintiff excepted.

The Court thereupon gave the jury the following instructions :

" I shall charge that malice or gross or willful disregard of plaintiff's rights has not been sufficiently established to allow the jury to find vindictive or consequential damages."

The Court further charged the jury as follows : " In a great measure I have cut off plaintiff from his main source of expectation of a verdict. The plaintiff may be regarded as owner of the stock of liquors in the store which was seized and closed up under execution against Harris & Co. That execution was void as against Wm. Harris, and the Sheriff and defendants were trespassers in taking possession of the goods and detaining them ; and plaintiff is entitled to sue for and recover all the damages he has sustained. These damages are not those remote, contingent, hypothetical, doubtful damages which arise on profits which plaintiff might have made. You cannot estimate those. What you can estimate is the direct damage to his business and goods resulting from their seizure and detention. You cannot estimate any damage by way of interest, as the value of the goods has not been proved ; and it is merely because I believe that plaintiff has been injured and damaged more than the interest upon the value of his goods during their detention

would amount to, that I now instruct you that he is entitled to recover the profits he would have made on sales during the detention. After the property was restored to him, and it was restored intact, the damages that may have ensued are too remote, consequential and doubtful to be allowed for in your verdict. In addition to these damages, you may regard the expenses—twenty-five dollars—testified to by Cushing. The injury which afterwards resulted was from another source, and cannot now be recovered for in damages. Your verdict should be a liberal compensation within the limits I have prescribed, but must not go so far as to indicate prejudice, or it would be hereafter set aside by the Courts." To which said charge, and each and every part thereof, plaintiff then and there excepted.

The jury found for plaintiff three hundred dollars damages. Plaintiff moved for a new trial, which was refused; and from this order and from the judgment plaintiff appeals.

*J. W. Winans*, for Appellant.

I.   It was a proper question for the jury to find whether the trespass of respondents was accompanied with malice, or wanton or oppressive conduct, or gross or willful disregard of plaintiff's rights ; and the Court erred in taking this question and the several branches thereof from the jury.

If there is any evidence, however slight, it is error for a Court to tell a jury there is none, or for the Court to instruct them upon the weight and sufficiency of evidence. (*Schneer* v. *Lemp*, 2 Bennett, 142 ; *Emerson* v. *Sturgeon*, 3 Id. 170 ; *Obushon* v. *Boone*, 10 Mo. 442 ; *Courtland* v. *Montgomery*, 1 Swan, [Tenn.] 452 ; *Hayes* v. *Bell*, 1 Bennett, 496 ; *Copeland* v. *Hull*, 29 Maine, 93 ; *Saunderson* v. *Luce*, 1 Chandler, [Wis.] 231 ; *Richardson* v. *Provost*, 4 Strobh. 57 ; *Chauteau* v. *Steamboat St. Anthony*, 12 Mo. 389 ; *Whitney* v. *State*, 8 Id. 165 ; *United States* v. *Sarchet*, Gilpin, 273.)

*Ray* v. *Low* (1 Pet. C. C. 210) is in close analogy with the present case, and the Court there holds, per Washington, J. : " Whether the suit was brought maliciously, and for the purpose of oppressing the defendant, is a conclusion to be drawn by the jury

from all the circumstances of the case." (See also *Coffin* v. *Phœnix Ins. Co.*, 15 Pick. 291 ; *Salter* v. *Myres*, 5 B. Monroe, [Ky.] 281 ; *Crane* v. *Lessee of Morris*, 6 Pet. 21 ; *Fireman's Ins. Co.* v. *Walden*, 12 Johnson, 516.)

II.   If the trespass of defendant was accompanied with malice, or wanton or oppressive conduct, or gross or willful disregard of plaintiff's rights, plaintiff was entitled to recover not only consequential, but even, in the discretion of the jury, exemplary damages.   (*Sherman* v. *Dutch*, 16 Ill. 286 ; *Spegelmoyer* v. *Watler*, 3 Watts & Serg. 540 ; *Dennison* v. *Hyde*, 1 Conn. 508 ; *Edwards et al.* v. *Beach*, 3 Day, 447 ; *Johnson* v. *Courts*, 3 Harris & Mc-Henry, 510 ; *Dickinson* v. *Boyle*, 17 Pick. 78 ; *Tifts* v. *Culver*, 3 Hill, 180 ; *Woert* v. *Jenkins*, 14 Johnson, 352 ; *Wylie* v. *Southerman*, 8 Iredell, 236.)

"In the action of trespass, *vi et armis*, for the destruction of or injury to chattels, the jury are not restricted in their assessment of damages to the mere pecuniary loss sustained by the plaintiff, but may award damages for the malicious conduct of the defendant and the degree of insult with which the trespass was committed." (*Duncan* v. *Stalcup*, Dev. & Bat. 440.)

It appears, then, from this authority, that even if the conduct of defendants had been accompanied with insult to the feelings of plaintiff, they would be liable therefor.   Indeed, the very fact of their officious intermeddling with the Sheriff, by giving him various instructions, and by themselves directing the movements of the levy, the detention, and the sale, would of itself involve a liability; for in *Hunter* v. *Burtiss* (10 Wend. 358) it is held, that where an illegal arrest is made, the attorney, although otherwise not responsible, becomes so if he officiously interposes in directing the arrest. In the present case, the defendant, Cashman, was the real actor, and the Sheriff, relying on his indemnity, became the mere passive agent of his will.

III.   The Court erred in charging the jury that plaintiff was not entitled to recover consequential damages, or damages which he had sustained by loss of profits, and in excluding the evidence on the question of profits.

In *Lacour* v. *Mayor* (3 Duer, 420) the Court says : "Applying

the principle of these cases to that now before us, we think the profits lost by the suspension of the plaintiff's work, in consequence of the damage resulting from the negligence of the defendants, constituted a proper item of damage. They were a direct consequence of the injury. They were proved to as approximate a certainty as any future event could be proved. They were profits in the principal business which was suspended by the injury, and not those resulting from some collateral or independent transaction; and they were proved, not by the opinion of outside witnesses, but by the positive testimony of the plaintiff's own foreman, who established conclusively a uniform daily profit of from twenty-five to thirty dollars, etc." In the present case, the damage of plaintiff from loss of profits for at least one month, and indeed longer, (for the plaintiff offered to show how long the falling off in his business lasted, and the Court erroneously ruled him out) was also proved to as approximate a certainty as any future event could be proved, and a uniform monthly profit was clearly established. (*Scott* v. *Bay*, 3 Maryland, 1 Miller, 432; *Sewall's Falls Bridge* v. *Fiske*, 3 Foster, [N. H.] 172; *Petit* v. *Mercer*, 4 B. Monroe, 51; *Clifford* v. *Richardson*, 18 Vt. 620; *Tarleton* v. *McGanley*, Peak, N. P. Cases, 205—a very strong case; *Lincoln* v. *Saratoga & S. R. R. Co.*, 23 Wend. 425—where it is held that evidence of loss of profits sustained by plaintiff in consequence of the injury is proper to aid the jury in estimating the damages; *Dewint* v. *Wiltsey*, 13 Ala. 509; *Ingraham* v. *Lawson*, 6 Bingham's New Cases, 212; *White* v. *Mosley*, 8 Pick. 356.)

IV. The act of defendants, even if performed under color of process against Harris, was a naked trespass against plaintiff, and, *quoad* him, not only constituted defendants trespassers *ab initio*, but deprived them of every extenuation or defense which arises from wrongful acts done under color of erroneous process. (*Morrison* v. *Blodgett*, 8 N. H. 238; *Johnson* v. *Evans*, 7 M. & G. 250; *Bunoll* v. *Acker*, 23 Wend. 606; *Topell* v. *Blaisdell*, 5 N. H. 193.)

V. Defendants, having directed and aided the Sheriff in the commission of an illegal act, are personally responsible to plaintiff for the injury sustained. (*Root* v. *Chandler*, 10 Wend. 112; *Win-*

*teringham* v. *La Foy*, 7 Cow. 735; *Hunter* v. *Burris*, 10 Wend. 358; *McGuinty* v. *Herrick*, 5 Id. 246.)

*J. B. Harmon*, for Respondent.

I.   The record shows simply the ordinary course of a plaintiff in execution endeavoring to make his money by levy and sale.

There is nothing to show that Cashman said or did anything which, as plaintiff in the writ, he might not lawfully do.   The items of evidence relied on by plaintiff as showing malice, or wanton, or reckless conduct, we are willing to submit to the judgment of the Court.

The judgment in favor of Cashman & Sullivan against Moses Harris *et als.*—William Harris, whose property was seized, being one of *the others*—was in full force at the time of the levy and sale.   Cashman supposed it to be a valid judgment, as he was guided entirely by his attorney.

II.   Defendants, having a judgment regular on its face, had a right to issue execution and proceed to make their money ; and the fact that this judgment was subsequently set aside does not retract so as to make defendants liable as for a wanton or malicious trespass.

III.   This is eminently a case in which a jury never does justice, unless the Court instructs, as was done here.   If the judgment were void, the jury naturally infer from that fact alone that defendants must have been actuated by malice, whereas in this case it does not even tend to prove malice.

The charge of the Court was more favorable to the plaintiff than the law justifies.   The jury were allowed full scope to give damages for profits plaintiff might have made during the stoppage of his business, which was erroneous.

IV.   The charge of the Court that there was no evidence of malice was right; and even if technically wrong, the judgment will not be reversed, because, on the whole case, justice has been done. (*Remington* v. *Congdon*, 4 Rich. 310 ; *Graham* v. *Bradley*, 5 Humph. 476 ; 6 Cow. 118 ; 5 Ga. 456 ; *English* v. *Marshall*, 19 Cal. ; 16 Wend. 663 ; 7 Id. 160 ; *Coit* v. *Tracy*, 9 Cow. 1 ; *Copeland* v. *Copeland*, 28 Me. 225 ; *Pico* v. *Stevens*, 18 Cal.

377; *Terry* v. *Sickles*, 13 Cal. 429; 17 Cal. 569; 3 Graham & Waterman on New Trials, 751–756, where most of the cases are cited.) In the first case cited above, the Court instructed the jury, in action for libel, that there was no. evidence of express malice where there was slight evidence of it, but not sufficient to sustain a verdict, and it was held that this was no ground for new trial.

COPE, J. delivered the opinion of the Court—FIELD, C. J. concurring.

There is nothing in the evidence in this case from which a jury would be authorized to infer that the trespass complained of was the result of malice. The action is for damages for the seizure of a stock of goods under an execution issued upon a void judgment; but the fact of the invalidity of the judgment is not sufficient to warrant the conclusion that the seizure was malicious. The defendants acted in the matter upon the advice of counsel, and there is no reason for supposing that they either knew or suspected that the judgment was invalid. There was nothing extraordinary in the circumstances attending the seizure, and the course ordinarily adopted in such cases seems to have been substantially pursued. The seizure was undoubtedly a hardship upon the plaintiff; but there is no evidence of any wrongful design or willful misconduct tending to aggravate the offense. The case presented is that of a simple trespass, and the Court below acted properly in refusing to allow exemplary damages.

This view of the case disposes of the principal points argued in the briefs of counsel; and we think that none of the errors assigned are sufficient to justify a reversal. The trial seems to have been conducted in the most favorable manner possible for the plaintiff, though the amount recovered is probably a very inadequate compensation for the injury sustained. The hardships of the case, however, are not to be considered; and the right of recovery is necessarily limited to such damages as are susceptible of computation. The damages claimed on account of the loss of profits are not of this description, and the introduction of evidence upon the subject could only have resulted in confusion and embarrassment.

It is impossible to administer exact justice in cases of this character; and the effort to do so would terminate in conclusions founded to a great extent upon speculation and conjecture.

Judgment affirmed.