[S. F. No. 11529. In Bank.—October 3, 1927.]

VICTOR ETIENNE, Jr., Appellant, v. ZEB KENDALL, Respondent.

[1] APPEAL—ERROR IN PLEADING—SECTION 4½, ARTICLE VI, CONSTITUTION.—Under the terms of section 4½ of article VI of the constitution, when an attack upon a judgment on appeal is based upon an error in the pleadings, it is incumbent upon the appellant to demonstrate before the appellate court that the error complained of has resulted in a miscarriage of justice; and even

1.  See 2 Cal. Jur. 1006.

in such a case the appellate court may not reverse the judgment except upon an examination of the entire cause, including the evidence.

(1) 4 C. J., p. 912, n. 77, p. 1170, n. 33; 13 C. J., p. 391, n. 85; 14 C. J., p. 713, n. 6.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Walter Perry Johnson, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. P. O'Brien for Appellant.

William H. Metson and W. G. Deal for Respondent.

THE COURT.—This cause was transferred to the supreme court after decision and judgment in the second division of the district court of appeal of the first district, on petition of the appellant, who contends that the decision is in error in holding, first, that the representations made by the defendant were merely statements of his opinion, and not of facts, and, second, that the plaintiff treated the answer of the defendant as raising an issue as to the falsity of the representations charged. Upon a further consideration of the matter we are satisfied that under the facts of this particular case the opinion written by Mr. Justice Nourse, and concurred in by Mr. Justice Sturtevant and Mr. Presiding Justice Koford, disposed of those matters correctly.

The opinion is, therefore, adopted as the opinion of this court.

"Plaintiff sued for the rescission of a contract for the purchase of shares of stock in a mining corporation, alleging fraudulent misrepresentations as an inducement to the execution of the contract. Judgment went for the defendant and the plaintiff has appealed upon a bill of exceptions.

"The complaint alleged that on November 21, 1921, the plaintiff and the defendant entered into a written agreement wherein the plaintiff agreed to purchase and the defendant agreed to sell 250,000 shares of the capital stock of the Consolidated Virginia Mining Company, a corporation,

for the total purchase price of $152,005; that upon the execution of the agreement the sum of $20,822.25 was paid by the plaintiff to the defendant in cash and at the same time plaintiff delivered to the defendant his promissory note for the balance, secured by the shares of stock covered by the purchase and also by other collateral; that for the purpose of inducing the plaintiff to enter into said agreement the defendant represented to him that the said corporation 'contained known ores and minerals and ore bodies situate in the so-called ''Old Bonanza Stopes,'' in said mine, and between the 1500 and 1600 foot levels, in said mine, amounting to 2,000,000 tons of ores and minerals, that were valued at from $20 to $25 per ton; that all of said ores, minerals and ore bodies, could be mined, extracted, and reduced at a cost of not exceeding $3.00 per ton'; and that within a very short time thereafter the stock of said corporation would greatly increase in value and large dividends thereon would be paid; 'that the representations so made, by the defendant, to the plaintiff, as aforesaid, were and are untrue, and were then known to the defendant to be false and untrue, and the said representations were fraudulently made, by the defendant, with the intent to mislead and deceive the plaintiff, and to induce him to enter into the agreement, aforesaid'; that the plaintiff, believing and fully relying upon said representations, was induced to enter into said agreement because of them; that the plaintiff did not discover the falsity of said representations until about July 30, 1923, and that upon discovering the facts which entitled him to rescind said agreement he immediately gave notice of rescission thereof to the defendant; that the defendant for many years past has been a stock broker and engaged in the business of promoting, operating and dealing in mining properties, but that the plaintiff was practically unfamiliar with the business of mining or the manipulation of the stocks of mining corporations. The answer alleged that for some time prior to the execution of the agreement the plaintiff had become interested in the purchase of mining stocks of corporations operating in the vicinity of the Consolidated Virginia and had urged the defendant to sell to him some of the stock of the latter company believing that because of renewed activity of operations in that locality the stock of the Consolidated Virginia would enhance in value; that the

plaintiff had been to Virginia City, Nevada, where the properties of these corporations were located, and had familiarized himself with the Consolidated Virginia mine and with other properties in the immediate neighborhood; that the stock was sold to the plaintiff at the latter's solicitation and upon the basis of quotations then made on the San Francisco Stock Exchange. The answer further denied that the 'defendant estimated or represented to the plaintiff the amount or value of said ores described in said complaint, or at all, or made any representations or inducements that led the plaintiff to purchase any of said stock, or at all.' The answer further denied that the defendant 'represented to the plaintiff that the Old Bonanza Stopes in said mine between the 1500 and 1600 foot levels contained ore amounting to two million tons; that said ore was valued at twenty to twenty-five dollars per ton; that said ore minerals and ore bodies could be mined and extracted at a cost of $3.00 per ton; that dividends would be paid; or at all made any representations or extended any inducements to plaintiff of any nature relative to the purchase by the plaintiff of any stock in said company.'

"On this appeal it is contended on behalf of appellant that the decision is not sustained by the evidence; that the decision is against law; that the decision does not sustain the judgment, and that the judgment is erroneous and against law. Although on the face of the briefs it appears that four separate points are raised in the attack upon the judgment, there is but one, as all four points advanced are really an attack upon the nature of the denials in the answer. In reference to the first three charges of fraudulent representations—the tonnage in the Bonanza stopes, the value thereof and the average cost of extracting and treating the ore therefrom—the trial court found that the respondent did inform the appellant that the old Bonanza stopes contained approximately 2,000,000 tons of ore of a value of $20 to $25 a ton, but that in this connection the appellant knew that the respondent had no information as to the amount of the tonnage or the value of the ore, but was merely giving an estimate or opinion based upon information given him by others, and that there was no evidence that the ore in said stopes did not amount to said quantity or that it was not of said value. The court ex-

pressly found that it was not true that there was not
2,000,000 tons of ore in said stopes of the value of $20 to
$25 per ton. It was further found that the respondent told
the appellant that with improved facilities for treating ore
at the mine the ore taken from said stopes could be ex-
tracted and reduced at a cost of about $3 per ton, and that
under such circumstances large profits would result from
the operation of said mine and that the dividends to be
paid upon said stock would greatly increase. In this con-
nection, however, it was found that these statements were
also opinions only, were understood as such by the appellant,
and were not treated by him as representations of fact.
These findings were amply supported by the evidence. The
properties of the Consolidated Virginia had been operated
for a period of about fifty years prior to the execution of
the contract. The old Bonanza stopes were known to have
contained much valuable ore, but because of a fire which
occurred therein in the year 1878 they had been bulkheaded
off and had not been mined. The opinion had been freely
expressed by those familiar with the conditions of the mine
that these stopes would run 2,000,000 or more tons of ore of
a value of $20 to $25 a ton. The problem which confronted
those interested in the operation of the mine was to extract
this ore, and the appellant and others interested in the
affairs of the company entered upon this project in anticipa-
tion of procuring this large body of ore. However, some
time after the execution of the contract, when the stopes
were opened for the purpose of extracting the ore, opera-
tions were stopped because of a recurring fire. There is
really no conflict in the evidence which goes to support these
findings of the trial court. In fact, the appellant frankly
stated that he had no information as to the quantity of ore
or its value or as to the cost of extracting and treating it if
the proposed new mill and improved facilities were put in
operation.

"As we have said, the real ground advanced by the ap-
pellant on this appeal is that, because of the character of
the denials in the answer, the falsity of representations
charged in the complaint was admitted, that, therefore, the
findings should have been in accord with the admissions of
the pleading rather than upon the evidence adduced at the
trial, and, consequently, the decision is against law and does

not sustain the judgment. The theory of the appellant is that as the complaint alleged misrepresentations in respect to the quantity *and* quality of the minerals contained in the old Bonanza stopes *and* the cost of mining and reducing said ores and alleged that each of said representations was false and known to be false by the defendant, while the answer denied these allegations in the language of the complaint and did not deny in the disjunctive that each alleged representation was false or that the respondent knew each to be false or that each of such representations was made with intent to mislead and deceive appellant, or that appellant acted or relied upon any one of said representations or was misled or deceived by any one of them, the answer must be treated as an admission of any one of the alleged false representations. From this it is argued, in accordance with the well-settled rule, that if any one of the material representations upon which the complaint for rescission is based is true and the other elements entitling a party to a rescission are present the party aggrieved is entitled to judgment.' (2 Pomeroy's Equity Jurisprudence, 2d ed., sec. 880.)

"If the appellant had moved for judgment upon the pleadings upon the ground of respondent's failure to specifically deny the allegations of the complaint noted there would be some merit in his attack upon the answer. However, he was not content to do this, but proceeded to trial upon the theory that the issues were properly presented. This trial commenced on December 26, 1923, and after a number of witnesses were called, was continued to January 10, 1924, for further hearing. At this time other testimony was heard and another adjournment to January 24, 1924, was taken, at which time further testimony was taken all on the subject of the issues raised by the complaint, that is to say, the truth or falsity of the representations upon which the appellant relied and the truth or falsity of his allegations of lack of knowledge or means of knowledge of the conditions of the mine and the quantity and value of the ore bodies located therein. Throughout the trial no objection was made to the admission of any of this evidence and no suggestion was made until the opening brief was filed on this appeal that any of the facts alleged in the complaint were admitted by the answer.

"The cause having been tried upon the theory that the issues were properly pleaded, we are now asked to reverse the judgment for the sole reason of an error in the answer which was not suggested to the trial court at any stage of the proceeding. Section 4½ of article VI of the Constitution provides that 'No judgment shall be set aside . . . for any error as to any matter of pleading . . . unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'

[1] "Under the terms of this section when the attack upon the judgment is based upon an error in the pleadings it is incumbent upon the appellant to demonstrate before the appellate court that the error complained of has resulted in a miscarriage of justice. But even in such a case the appellate court may not reverse the judgment except upon an examination of the entire cause, including the evidence. Where, therefore, upon an examination of the evidence the appellate court is satisfied that the error complained of has not resulted in a miscarriage of justice, but that in fact it has not affected the substantial rights of the appellant in any particular it would be a distinct violation of this section of the Constitution to reverse the judgment solely upon the ground of the error occurring in the pleadings. Our examination of the record here discloses that the appellant suffered no prejudice because of any defect in respondent's pleading, but that to the contrary the pleading was treated as having fully tendered the issues to be tried by the trial court, and that after a fair and impartial trial of those issues the trial court found against the appellant upon substantial evidence, which in all essential matters was uncontradicted."

For the foregoing reasons the judgment is affirmed.