### HORD v. NATIONAL HOMEOPATHIC HOSPITAL.

#### Civ. A. No. 5222–49.

United States District Court
District of Columbia.
Feb. 25, 1952.

David G. Bress, of Washington, D. C., for plaintiff.

Cornelius H. Doherty, of Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is a motion by the defendant for a new trial in an action to recover damages for the wrongful death of a child three days old. The jury returned a verdict for the plaintiff for $17,000.

■ The child's mother was taken to the defendant, National Homeopathic Hospital, shortly before his birth. In the last stages of labor, she was moved to the delivery room and placed on a delivery table. When the child was born, he fell through an opening in the middle of the table and hit a pan or bucket standing on the floor. The baby sustained a cut on his forehead and died three days later.

The foregoing facts are admitted. The defendant, however, denied the charge of negligence leveled against it, and further disputed that the child's death was caused by the fall. On the issue of negligence, the evidence was uncontroverted that the hole in the delivery table was intended for drainage; that before birth takes place, it is customary to fill the hole with rubber padding to prevent such accidents as occurred in this instance, and to leave a very small opening for drainage; and that on this occasion for some unexplained reason the hole was not padded. The inference of negligence drawn by the jury was fully sustained by the evidence. In fact any other conclusion would have been unreasonable.

■ On the issue of cause of death, a brain surgeon, who examined the child's brain after his death, expressed the opinion that death was due to a blow on the head sustained at the time of birth. A physician called by the defendant testified that death resulted from a failure of respiratory organs, and when further interrogated stated that in his opinion it was conjectural whether the blow on the head was instrumental in bringing about the child's death. Again, the jury's inference that the fall and the consequent blow on the head at the time of the child's birth were a cause of death, was fully sustained by the evidence.

The only point on the defendant's motion for a new trial that deserves serious consideration is the amount of damages awarded by the jury. The defendant contends that in case of a child of tender age only nominal damages should be allowed, in addition to the medical and funeral expenses incurred by the parents, which in this case amounted to about $131.

■ The objective of the statutes that created a cause of action for death caused by the negligent act of another was to fill a serious gap or omission in the common law. Their objective was to ameliorate the harsh rule that denied any recovery if the injured person died, while permitting an award of damages if he lived. Such statutes must be construed and applied in the liberal spirit contemplated by their framers and with a view to effectuating their purpose. This principle was enunciated by Mr. Justice Cardozo in Van Beeck v. Sabine Towing Co., 300 U. S. 342, 350–351, 57 S.Ct. 452, 456, 81 L.Ed. 685, in the following felicitous manner: "Death statutes have their roots in dissatisfaction with the archaisms of the law * * *. It would be a misfortune if a narrow or grudging process of con-

struction were to exemplify and perpetuate the very evils to be remedied."

■ Ordinarily such statutes limit the damages to the pecuniary loss sustained by the family of the deceased. No compensation is permitted for grief, mental anguish, or sentimental loss. Probably the purpose of this restriction is to confine the amount of damages within reasonable bounds and to prevent improvident and extravagant awards. On the other hand, this limitation must not be used to defeat the humanitarian objective of the statutes and to limit recovery to nominal damages. The pecuniary loss resulting from the death of a member of the family cannot be ascertained with precision or computed with accuracy. True, in the case of an adult, the income of the deceased and his earning capacity form a partial basis for a conclusion. Even in such a situation, however, an element of chance and conjecture enters into the determination, because if the deceased had not lost his life as a result of the defendant's negligence, he might have died shortly thereafter in another accident or from some natural cause. For this reason mortality tables furnish some guide even though they are based entirely on averages.

■ In the case of an infant who has not as yet developed any earning capacity, there is a greater play for discretion on the part of the jury. This circumstance, however, constitutes no reason for not awarding substantial damages for the death of a small child. Otherwise, the purpose of the statute would be frustrated to that extent and a person who negligently caused the death of an infant would be free of all liability. Such a result would be abhorrent and unjust. It would "keep the word of promise to our ear, and break it to our hope".

■ The law does not differentiate between the death of an adult and the death of an infant. Consequently, the general rule is that substantial damages should be awarded in any death case in which the plaintiff prevails, irrespective of the age of the deceased. Mortality tables showing the life expectancy of the deceased, as well as the life expectancy of the parents, may aid in the ascertainment of damages.[1] The earnings of the child during his minority belong to his father. So too, the possibility that the child may make contributions to the support of his parents even after he reaches majority may be taken into account. As against these factors, consideration must be given to the cost of bringing up the child.

This method of ascertaining damages is, no doubt, artificial and unrealistic, but it is a rule that the law has formulated in order to afford a substantial recovery without allowing license for extravagant verdicts for grief and injury to feelings. Naturally, much must be left to the wise discretion and sound judgment of the jury, since the amount of damages is not subject to mathematical calculation. This is true, however, in most tort cases.

This doctrine is sustained by the weight of authority. It is also the rule in the District of Columbia. In United States Electric Lighting Co. v. Sullivan, 22 App. D.C. 115, 136, in discussing death statutes, the Court stated: "In numerous * * * cases that might be cited, the * * * liberal rule for the ascertainment of damages to next of kin has been followed as necessary to give any practical effect to the remedial purpose of such legislation. In many of these, where the deceased was an infant (sometimes of tender years), the recovery has not only been permitted to include probable pecuniary injury, founded on a legal claim to the deceased infant's services during minority, but also that which might be fairly estimated with reference to the reasonable expectation of the continuance, to some extent, of those services after majority, founded on conditions of age, feeble health, and poverty reasonably sufficient to create a strong moral obligation on the part of the child."

In Smith v. Cissel, 22 App.D.C. 318, which involved the death of a child eight years old, the Court in an opinion writ-

1. According to recent mortality tables, which were offered in evidence, the life expectancy of a child less than one year is over 61 years.

ten by Chief Justice Alvey sustained the right of the administrator, "to recover more than mere nominal damages".

This doctrine was followed in Globe Furniture Co. v. Gately, 51 App.D.C. 367, 279 F. 1005.

In Earl W. Baker & Co. v. Lagaly, 10 Cir., 144 F.2d 344, 347, 154 A.L.R. 1098, the Court said, in affirming a judgment for $5,000 for the death of a six-year old child: "The amount of damages properly recoverable in a case of this kind is incapable of exact mathematical demonstration. It is a matter of reasonable approximation having its basis in a proper consideration of all relevant factors."

One of the leading cases on this point is Ihl v. Forty-second Street, Etc., R. R. Co., 47 N.Y. 317, 320-321. A substantial verdict for the death of a three-year old child was sustained as against a contention that only nominal damages should have been awarded. The Court discussed this matter as follows: "The absence of proof of special pecuniary damage to the next of kin resulting from the death of the child would not have justified the court in nonsuiting the plaintiff, or in directing the jury to find only nominal damages. It was within the province of the jury, who had before them the parents, their position in life, the occupation of the father, and the age and sex of the child, to form an estimate of the damages with reference to the pecuniary injury, present or prospective, resulting to the next of kin. Except in very rare instances, it would be impracticable to furnish direct evidence of any specific loss occasioned by the death of a child of such tender years; and to hold that, without such proof, the plaintiff could not recover, would, in effect, render the statute nugatory in most cases of this description. It cannot be said, as a matter of law, that there is no pecuniary damage in such a case, or that the expense of maintaining and educating the child would necessarily exceed any pecuniary advantage which the parents could have derived from his services had he lived. These calculations are for the jury, * * *."

In Gill v. Laquerre, 51 R.I. 158, 160-161, 152 A. 795, 796, a verdict for a substantial sum for the death of a five-year old child was sustained as against an objection that the recovery should have been limited to nominal damages. The Court wrote as follows: "It is contended that, owing to the fact that the decedent in the instant case was too young to have had any earning capacity, * * * only nominal damages can be recovered. We cannot give our assent to this view of the law applicable to a case of this kind. To so hold would in effect result in a nullification of the statute. It is true that no rule approximating certainty for the assessment of damages can be laid down in actions for damages to the estate of a child too young to have demonstrated an earning capacity, but it does not follow that for this reason the courts are powerless to afford a remedy. We are of the opinion that the practical rule in these cases is to bring before a jury the facts relating to the age, sex, physical and mental characteristics of the child, the position in life and earning capacity of its parents, as bearing upon the conditions under which the child would probably have been reared and educated, and leave it to the jury to assess the damages subject to the power and duty of the trial justice to confine the award within the bounds of reasonable probability. While this rule leaves much to be desired as to certainty, it is preferable to the alternative urged by the defendant, which would permit one legally responsible for the death of a child to escape civil liability therefor. There is ample authority for this view of the law."

In Wallace v. City of Rock Island, 323 Ill.App. 639, 641, 642, 56 N.E.2d 636, 637, a verdict for $500 for the death of a thirteen-year old boy was set aside as inadequate. In discussing this question, the Court said:

"Damages in cases of this character are incapable of determination by any fixed mathematical calculation or rule of certainty. From the very nature of the circumstances, there can be no exact rule of determining the value of services which a deceased child would have rendered, had death not intervened. So, we find that such damages as are assessed by the jury are

peculiarly subject to the power and duty of the trial judge to consider same with a view to the 'bounds of reasonable probability. It might be said that this rule leaves much to be determined as to certainty, but it is not altogether a stranger to tort actions in general. Verdicts in personal injury suits, * * * differ materially in cases where the circumstances are not dissimilar.

\* \* \* \* \* \*

"Under the rule in this State, a parent, on the finding of negligence causing the death of a minor son, is entitled to a substantial verdict."

In Atkeson v. Jackson Estate, 72 Wash. 233, 240–241, 130 P. 102, 105, the Court in sustaining an award of substantial damages for the death of a child two years old, discussed this subject as follows: "It may be that, had the daughter reached her majority, and had the respondents maintained their present financial condition and carried out their expectations concerning her, the expense of her care, nurture, and education would have exceeded her earnings on their behalf. But, since adversity and misfortune are sometimes the accompaniments of life, as well as prosperity and success, there is another side to the picture. It is possible that the respondents may lose the property they have accumulated, and at the same time their health and ability to earn money. If such a misfortune should befall them, might it not be said that the daughter's earnings, had she lived, would have greatly exceeded her cost of maintenance? And who shall say that such a misfortune may not befall them? And if the probability exists, why may not a recovery be based thereon? There is, of course, no certain measure of damages in cases of this character; but, notwithstanding this difficulty, *the great weight of authority is that a substantial recovery may be had.*" (Emphasis ours.)

To multiply quotations would unduly extend this discussion. It will suffice to cite a few additional cases which enunciate the same principle, Clevenger v. Kern, 100 Ind.App. 581, 584, 197 N.E. 731; Immel v. Richards, 154 Ohio St. 52, 53–56, 93 N.E. 2d 474, Jasper County Lumber Co. v. McMillan, Tex.Civ.App., 188 S.W.2d 731.

Counsel for the defendant refers to three cases which tend to support a contrary view[2]. These decisions are in the minority. As indicated above, the great weight of authority sustains the doctrine that substantial damages should be awarded for the wrongful death of a child of tender age, even though the amount of damages cannot be computed with any degree of certainty. Moreover, as also shown above, the District of Columbia adheres to the majority view.

Clearly the amount of the verdict in this case is not excessive. It does not shock the Court's conscience. In determining what constitutes a reasonable amount of damages the shrinking purchasing power of the dollar must be borne in mind. Juries are properly sensitive to this consideration. A day-to-day observation leads the Court to the view that because of this circumstance the size of verdicts in tort cases has increased considerably in the past few years, and properly so. As far back as 1888, a verdict of $1,000 for the death of a four-month old child was upheld in City of Joliet v. Weston, 1888, 123 Ill. 641, 14 N.E. 665; and in the following year a verdict of $2,000 for the death of a one-year old child was sustained in Chicago, Milwaukee & St. Paul Ry. Co. v. Wilson, 1889, 35 Ill.App. 346. Bearing in mind the difference between the value of money in the 1880's and its present value, a verdict over sixty years ago of one or two thousand dollars is equivalent to one for many times that amount as of today.

In 1906 a verdict for $2,160 for the death of a child less than a year old was sustained in Abby v. Wood, 43 Wash. 379, 86 P. 558.

In 1924 a verdict for $8,000 for the death of two children,—one two years old

2. Scherer v. Schlaberg & Griffin, 18 N.D. 421, 122 N.W. 1000, 24 L.R.A.,N.S., 520; Wilson v. Consolidated Dressed Beef Co., 295 Pa. 168, 145 A. 81; and Moser v. Hand, 5 Cir., 81 F.2d 522. The last-cited case was decided under the law of Mississippi. In the Scherer case, supra, there was a strong dissenting opinion.

and the other seven months old—, was upheld by a Texas court, Schaff v. Young, Tex.Civ.App., 264 S.W. 582, 585.

More recently a verdict for $5,000 for the death of a nine months old baby was sustained in Immel v. Richards, 154 Ohio St. 52, 53–56, 93 N.E.2d 474.

In 1936 a verdict of $6,000 for the death of a twelve-day old baby was upheld in Criss v. Angelus Hospital Ass'n, 13 Cal. App.2d 412, 420, 56 P.2d 1274. The Court stated that it would take judicial notice of the decrease in purchasing power of money. An award of $6,000 in 1936 would be equal to one of over $12,000 in 1951 or 1952.

In Couch v. Pacific Gas & Elec. Co., 80 Cal.App.2d 857, 183 P.2d 91, 97, a verdict of $27,500 for the death of a ten-month old child was reduced by the trial judge to $15,000. The appellate court affirmed the action of the trial judge stating that, "We cannot say that the sum allowed by the court is excessive." This decision was rendered in 1947 when the purchasing power of money was somewhat higher than it is today.

It seems unnecessary to multiply citations on this point. The verdict in this case is clearly within reasonable bounds, certainly as compared with verdicts in other jurisdictions in similar cases.

The Court is of the opinion that substantial justice has been done.

Motion for a new trial is denied.