**THYSSENKRUPP SAFWAY, INC., f/k/a Safway Services, Inc., a Delaware corporation, Plaintiff–Appellant,**

v.

**HYLAND HILLS PARKS AND RECREATION DISTRICT, Defendant–Appellee.**

**No. 10CA2349.**

Colorado Court of Appeals, Div. II.

Dec. 8, 2011.

Bloom Murr & Accomazzo, P.C., Martin A. Bloom, Briana K. Wiedersphan, Denver, Colorado, for Plaintiff–Appellant.

Richard L. Fuller, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

In this action for breach of contract based on an indemnity provision, plaintiff, Thyssenkrupp Safway, Inc. (Safway), appeals the judgment in favor of defendant, Hyland Hills Parks and Recreation District (Hyland Hills). The trial court granted a directed verdict in favor of Hyland Hills at the end of trial, finding, among other things, that Safway failed to prove it had complied with section 24–91–103.6(4), C.R.S. 2011—a statute dealing with governmental budgeting matters. We affirm.

## I. Facts

Hyland Hills, a quasi-municipal corporation and political subdivision organized under the Colorado Special District Act, sections 32–1–101 to–1807, C.R.S.2011, owns a water amusement park known as Water World. In May 2006, the general manager of Water World authorized his assistant general manager, Gary Maurek, to locate a scaffolding

company to assist in accessing a light fixture atop a tall pole that was misaligned. One of the companies Maurek contacted was Safway, which provides scaffolding products and services.

Maurek spoke with Safway's assistant construction manager and requested the manager to visit the premises. At that meeting, Maurek asked the Safway manager to estimate the cost to erect scaffolding around the light pole. After returning to his office, the Safway manager prepared a quote, which was in the form of a proposed contract, and faxed the quote to Maurek. The proposed contract contained an indemnification provision, which stated:

> [Hyland Hills] agrees to fully indemnify and hold harmless SAFWAY from all actions, claims, costs, damages, liabilities and expense, including reasonable attorneys' fees, which may be brought or made against SAFWAY, which in any way arise out of, are claimed to arise out of, or by reason of, the use or misuse of SAFWAY's equipment rented hereunder, excepting only such actions, claims, costs, damages, liabilities and expenses resulting from the negligence of SAFWAY. The intent hereof is that [Hyland Hills] shall fully indemnify and hold harmless SAFWAY to the maximum extent allowable by law.

Maurek did not forward the proposed contract to the Hyland Hills general manager. Instead he prepared, on a Hyland Hills form, a summary of the proposed cost and provided it to the general manager, who, in turn, provided the form to the executive director of Hyland Hills, who had the sole authority to approve any expenditure over $1,000. The executive director approved the expenditure of approximately $1,800, but did not provide Maurek or the general manager with any authority to sign a written contract on behalf of Hyland Hills. Maurek signed Safway's proposed contract form as "assistant general manager" and faxed it to Safway.

While Safway was erecting the scaffolding around the pole, the light fixture fell on Safway's employee, causing him to fall to the ground and sustain serious injuries. Safway paid workers' compensation benefits on behalf of the employee and thereafter commenced this action seeking indemnification from Hyland Hills for such amounts.

At trial, Hyland Hills asserted that Maurek did not have any authority to sign the contract. Hyland Hills also contended that Safway's claim was barred by section 29–1–110(1), C.R.S.2011, which requires local governments to spend only budgeted funds. Safway responded that Maurek had actual, implied, and apparent authority to sign the contract and that section 29–1–110(1) was not applicable based on an exception for public works contracts contained in section 24–91–103.6(4).

At the conclusion of a two-day trial, Hyland Hills moved for a directed verdict. The trial court granted the motion from the bench as well as in a later written order. In its oral ruling, the trial court found that Safway had failed to prove that Maurek had any authority to sign the contract. It also concluded that Safway had failed to provide a sworn statement required to trigger the public works exception in section 24–91–103.6(4) and, therefore, section 29–1–110(1) barred the claim. However, the trial court's written order addressed only the authority issue. This appeal ensued.

## II. Directed Verdict

Safway contends that it met the requirements of section 24–91–103.6(4) through its presentation of sworn testimony at trial, which should have precluded Hyland Hills from relying upon section 29–1–110(1) as a defense. We disagree.

### A. Preservation of Issue

██ We first reject Safway's argument that Hyland Hills may not assert the provisions of section 24–91–103.6(4) because the trial court did not address the statute in its written order. It is true that, when a court makes oral findings and conclusions that differ from its final written rulings, the final written order controls. *See Reed v. Indus. Claim Appeals Office,* 13 P.3d 810, 813 (Colo. App.2000). However, we may affirm a trial court's ruling on any grounds that are supported by the record, *see Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe,* 107

P.3d 402, 406 (Colo.App.2004), and Hyland Hills appropriately raised the issue in the trial court.

### B. Standard of Review

■ We review de novo a trial court's decision granting a motion for directed verdict. *MDM Group Assocs., Inc. v. CX Reinsurance Co. Ltd.*, 165 P.3d 882, 885 (Colo. App.2007).

■ Statutory interpretation is a question of law also subject to de novo review. *Sperry v. Field*, 205 P.3d 365, 367 (Colo.2009).

### C. Law

■ A motion for directed verdict should be granted only if the evidence compels the conclusion that reasonable jurors could not disagree and that no evidence or inference has been received at trial upon which a verdict against the moving party could be sustained. *Fair v. Red Lion Inn*, 943 P.2d 431, 436 (Colo.1997). The evidence must be viewed in the light most favorable to the nonmoving party. *Id.* If there is no conflicting evidence with respect to a particular issue raised by the motion for a directed verdict and the only concern is the legal significance of undisputed facts, then an appellate court may make an independent determination of the issue. *Evans v. Webster*, 832 P.2d 951, 954 (Colo.App.1991).

■ In construing a statute, our primary duty is to give effect to the intent of the General Assembly and adopt the statutory construction that best effectuates the purposes of the legislative scheme, looking first to the plain language of the statute. *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo.2005).

■ To effectuate the legislative intent, a statute must be read and considered as a whole and should be interpreted in a manner that will give consistent, harmonious, and sensible effect to all its parts. *State v. Nieto*, 993 P.2d 493, 501 (Colo.2000). We presume that the General Assembly intends a just and reasonable result when it enacts a statute, and a statutory construction that defeats the legislative intent will not be followed. § 2–4–201(1)(c), C.R.S.2011; *see Frohlick Crane Serv., Inc. v. Mack*, 182 Colo. 34, 37–38, 510 P.2d 891, 892 (1973). If the plain language of the statute is clear and unambiguous, we apply the statute as written, unless doing so leads to an absurd result. *E–470 Pub. Highway Auth. v. Kortum Inv. Co.*, 121 P.3d 331, 333 (Colo.App.2005).

■ If the statutory language unambiguously sets forth the legislative purpose, we need not apply additional rules of statutory construction to determine the statute's meaning. *People v. Cooper*, 27 P.3d 348, 354 (Colo.2001). "We read words and phrases in context and construe them literally according to common usage unless they have acquired a technical meaning by legislative definition." *People v. Yascavage*, 101 P.3d 1090, 1093 (Colo.2004).

Section 29–1–110(1) states:

During the fiscal year, no officer, employee, or other spending agency shall expend or contract to expend any money, or incur any liability, or enter into any contract which, by its terms, involves the expenditures of money in excess of the amounts appropriated. Any contract, verbal or written, made in violation of this section shall be void, and no moneys belonging to a local government shall be paid on such contract.

Section 29–1–102(13), C.R.S.2011, defines "local government," in pertinent part, as "any ... district, or other political subdivision of the state of Colorado."

Section 24–91–103.6(4) provides an exception to section 29–1–110(1) under certain circumstances. Section 24–91–103.6, C.R.S. 2011, provides, as pertinent here:

(1) No public entity shall contract with ... a contractor ... for the construction ... of a public works project unless a full and lawful appropriation when required by statute ... has been made for such project.

. . . .

(4) In the event that a good faith dispute arises between a public entity and a contractor concerning the contractor's right to receive additional compensation under a remedy-granting provision of the public works contract, *it shall not be a defense to*

*a civil action for payment for such claim that no moneys have been appropriated for such claimed amounts,* so long as the contractor has complied with all provisions of the contract applicable to the dispute, including but not limited to change order and additional work clauses, *and has submitted to the public entity a statement sworn to under the penalty of perjury which sets forth: The amount of additional compensation to which the contractor contends that it is entitled; that claim-supporting data which is accurate and complete to the best of the contractor's knowledge and belief have been submitted;* and that the amount requested accurately reflects what is owed by the public entity. As used in this subsection (4), "remedy-granting provision" means any contract clause which permits additional compensation in the event that a specific contingency or event occurs....

(Emphasis added.)

This exception is applicable to public works contracts. A "public works contract" is defined in section 24–91–103.5(1)(b), C.R.S. 2011, as follows:

As used in this subsection (1), "public works contract" means a contract of the ... special district, or any other political subdivision of the state for the construction, alteration, repair, or maintenance of any building, structure, ... public works, or any other work dealing with construction, which shall include, but need not be limited to, moving, demolition, or excavation performed in conjunction with such work.

### D. Application

Here, Hyland Hills is a special district, included within the definition of a local government under section 29–1–102(13), and section 29–1–110(1) is applicable to it. *See Shannon Water & Sanitation Dist. v. Norris & Sons Drilling Co.,* 29 Colo.App. 48, 49, 477 P.2d 476, 477 (1970). Furthermore, it is undisputed that Hyland Hills did not budget any funds during the period between 2006 and 2010 to reimburse Safway for any workers' compensation benefits.

However, as previously noted, section 24–91–103.6(4) provides an exception to the budgeting requirement regarding public works contracts. The trial court determined, and we agree, that the contract at issue here is such a contract, inasmuch as it provides for the repair or maintenance of a structure, in this instance a light pole. In addition, the parties agree that the indemnity provision in the written contract is a remedy-granting provision which would trigger the exception.

■■■ The only remaining issue under section 24–91–103.6(4), then, is whether Safway submitted to Hyland Hills a "statement sworn to under the penalty of perjury," setting forth "[t]he amount of additional compensation to which [it] contends that it is entitled," "that claim-supporting data which is accurate and complete to the best of [Safway's] knowledge and belief have been submitted," and "that the amount requested accurately reflects what is owed by" Hyland Hills.

Safway asserts that the statute does not specify when such a sworn statement must be provided or how the sworn statement is to be presented. Accordingly, it contends that the trial testimony under oath by its director of risk management, in which she testified about the amounts Safway had paid to or on behalf of its injured employee, satisfies this requirement. We disagree.

The plain language of the statute states that the sworn statement must be "submitted to the public entity," not submitted to the trial court. The clear purpose of the provision requiring submission of a sworn statement is to allow the public entity an opportunity to review the contractor's claim, determine its validity and the accuracy of its computation, and decide whether or not to pay the requested sum before litigation. It follows, therefore, that when the claim is based on a contract and has arisen before trial, the statement must be submitted to the entity sometime before trial, although here we are not required to determine, and do not opine, precisely when it must be tendered.

Here, it is undisputed that Safway did not present a sworn statement to Hyland Hills before trial indicating the amount it was seeking to recover or providing claim-sup-

porting data. As previously noted, if there is no conflicting evidence with respect to a particular issue raised by the motion for a directed verdict and the only concern is the legal significance of undisputed facts, then we may make an independent determination of the issue. *Evans*, 832 P.2d at 954.

We are not otherwise persuaded by Safway's reliance on *Town of Alma v. AZCO Construction, Inc.*, 10 P.3d 1256, 1257 (Colo. 2000). There, a municipality contracted with a third party to make improvements to its water system. The contract between the parties included a prevailing party attorney fee-shifting provision in the event of litigation. *Id.* at 1266. The town asserted that section 29–1–110(1) applied to prohibit recovery of attorney fee amounts in excess of the moneys appropriated by budget. The court rejected that assertion, concluding that the exception contained in section 24–91–103.6(4) was applicable. However, the only argument presented there was that section 24–91–103.6(4) did not apply because the contractor's post-trial motion for attorney fees did not qualify as a "civil action" within the meaning of the statute. Because no argument was asserted concerning the timing of the submission or the entity to whom the submission must be made, *AZCO Construction* is inapposite here.

Nor does the opinion of a division of this court in that same case, 985 P.2d 56 (Colo. App.1999), dictate a different outcome. There, the division specifically noted that "[a] claim for attorney fees by a prevailing party, based on the parties' contractual provision, arises after the trial, when the prevailing party can be identified." *Id.* at 58. In addition, the division noted that the contractor had filed the necessary affidavit concerning its fees after trial. The opinion does not state whether the affidavit was presented to the town other than through filing with the court. Moreover, the division did not address, nor does it appear that the parties argued, the portion of the statute requiring the submission to be made to the governmental entity, rather than filed with the court.

Because the issue concerning when the statement had to be submitted under the statute or to whom the statement had to be submitted was not addressed by either court in *AZCO Construction*, we are not persuaded that the case impacts our analysis here.

Furthermore, in *AZCO Construction*, both the division of this court and the supreme court were considering a contract provision that was triggered *after* trial, whereas here, the contract provision operated before trial and provided the sole basis for Safway to assert its indemnity claim against Hyland Hills.

Accordingly, because Safway's claim is barred, the trial court did not err in granting a directed verdict on this basis.

### III. Actual, Express, or Implied Authority

In light of our conclusions, we need not address whether the trial court correctly directed a verdict determining that Maurek had no authority, actual, express, or implied, to sign the contract.

The judgment is affirmed.

Judge LICHTENSTEIN and Judge MILLER concur.