Opinion by
JUDGE WEBB
¶1 This case arises from disputes over Summit County's building regulations. Plaintiffs, Jason L. Rodgers and James R. Hazel, a same-sex couple, primarily contend the County treated them differently from heterosexual couples when interpreting and enfore-ing these regulations.
¶ 2 On appeal, plamtﬁfs argue that the trial court erred by dismissing two of their claims; entering a directed verdict in favor of the County on their inverse condemnation claim and on three of the four challenged actions within their single 42 U.S.C. § 1983 equal protection claim; and improperly instructing the jury to consider only one challenged action within that claim.
¶ 3 Whether CRCP. 50 allows a tmal court to direct a verdict in part, as to some but not all actions or omissions within a single claim against a single defendant, is unresolved in Colorado. Because we conclude that the trial court erred in doing so, we reverse in part and remand plaintiffs section 1983 claim for retrial. We affirm the orders of dismissal and the directed verdict on the inverse condemnation claim.
I. Background
¶ 4 Plaintiffs built a home in Summit County that included a septic system. Before issuing a certificate of occupancy, County employees inspected this system. They concluded that it did not comply with either the County's regulations or the approved building plan obtained by the previous owner. According to the County, the septic tank was too small and required a subsurface drain that had not been installed. In addition, they found that plaintiffs' subcontractor had damaged wetlands on the property during the septic system installation.
¶ 5 Because winter was approaching, plaintiffs would be unable to fix these problems until spring. The County offered them a temporary certificate of occupancy. It required them to fix the septic system, mitigate the wetlands damages, and post a bond for the estimated costs. When plaintiffs did not post the bond, the County refused to issue a certificate of occupancy. Ultimately, they lost the home in foreclosure.
¶ 6 The trial court dismissed three of the five claims under CRCP. 8 and 12b)(B). The parties agreed to bifurcate the inverse condemnation from the section 1983 claims. During a bench trial on the inverse condemnation claim, the court entered a directed verdict in the County's favor. After plaln— tﬁ‘fs had rested in the jury trial on the seetion claim, the court directed a verdict in favor of the County on three out of the four actions on the basis of which plaintiffs asked the jury be instructed that, "taken as a whole, collectively establish[ ] that the County treated them in a discriminatory manner," The jury returned a verdict for the County on what remained of the section 1983 claim.
II. Dismissal
¶ 7 Plaintiffs contend the trial court erred in dismissing their first and third claims for relief. We affirm dismissal of the first claim because plaintiffs failed to plead exhaustion of their administrative remedies under the Colorado Civil Rights Act (CRCA), § 24-84-306, C.R.8.2012. We affirm dismissal of the third claim because they cannot bring a direct action for damages under the Colorado or U.S. Constitutions when other adequate remedies exist.
A. Standard of Review
¶ 8 Review of dismissal of a claim is de novo, accepting all factual allegations in the complaint as true. Monez v. Reinertson, 140 P.3d 242, 244 (Colo.App.2006).
B.. First Claim-Discrimination in Connection with Certificate of Occupancy
¶ 9 Plaintiffs' first claim asserts that County officials discriminated against them by *716 requiring certain actions not required of heterosexual couples before the County would issue a certificate of occupancy. The second amended complaint does not identify the statute underlying this claim. However, because plaintiffs' appellate briefs state that the claim lies under the CORA, see, eg., § 24-84-5022, C.R.8.2012, the dismissal will be analyzed based on that statute.
{10 Under the CCRA, any person alleging discrimination must file a complaint with the Colorado Civil Rights Commission (CCRC). § 24-84-806(1)(a). "No person may file a civil action in a district court based on an alleged discriminatory or unfair practice ... without first exhausting the proceedings and remedies available ... under [this seetion]." § 24-84-306(14). The proceedings and remedies include an investigation by the director of the commission, section 24-34-306(2)(a) - mediation, - section - 24-34-306(2)(b)(I1); and a hearing before the commission, a commissioner, or an administrative law judge, section 24-34-806(4). |
¶11 Plaintiffs point out that they pled compliance with all notice requirements of the Colorado Government Immunity Act (CGIA), section 24-10-1022, C.R.98.2012, and "any further attempts to obtain administrative relief would be futile." But the second amendéd complaint does not allege that they sought 'any administrative relief from the CCRC before proceeding with a civil action under the CCRA. And at oral argument, their counsel conceded that the CCRC administrative process had never been invoked.
¶ 12 Accordingly, the trial court did not err in dismissing the first claim for failure to plead exhaustion of administrative remedies.
C. Third Claim-State and Federal . Constitutional Violations
% Plaintiffs' third claim asserts that the County deprived them of their constitutional rights of due process, equal protection, and freedom of association under the U.S. and Colorado Constitutions, The trial court dismissed this claim because their allégations do not entitle them to recover damages through such a direct claim.
¶ 14 Section 1983 provides a remedy for any person who has been deprived of a constitutional right by state action. Before pursuing a direct claim under the U.S. Constitution, a plaintiff must utilize section 1983. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir.2001); see also Webb v. Johnson, 2007 WL 2936647, *3 (D.Colo.2007) (unpublished order). - And here, the fifth claim alleges violations of seetion 1983, based on the same conduct alleged in the third claim. Hence, the direct claim under the U.S. Constitution fails. See White v. Talboys, 573 F.Supp. 49, 50 (D.Colo.1983) ("It is well established that onee a claim for relief has been asserted under 42 U.S.C. § 1983, all other direct claims for relief based upon various amendments to the U.S. Constitution are unnecessary."). [1]
¶15 Like the U.S. Constitution, a direct claim for damages will lie under the Colorado Constitution only where no other adequate remedy exists, See Board of County Comm'rs v. Sundheim, 926 P.2d 545, 549, 553 (Colo.1996). Colorado statutes do not include a counterpart to section 1983 with which to enforce the Colorado Constitution. See Brammer-Hoelter v. Twin Peaks Charter Acad., 81 F.Supp.2d 1090, 1098 (D.Colo. 2000). But here, plaintiffs could have sought relief for the discrimination alleged under C.R.C.P. 106(a)(4) (abuse of agency discretion) and section 24-10-118(2)(2), C.R.$.2012 (tortious beliavior not protected by the CGIA). Therefore, the trial court did not err in dismissing the third claim.
III. Directed Verdict
¶16 Plaintiffs next contend the trial court erred in directing a verdict for the County on their inverse condemnation claim and on three of the four actions that form the basis for the section 1983 claim. We affirm the directed verdict on the inverse condemnation claim but reverse the partial directed verdict on the section 1983 claim.
*717 A. Directed Verdict Rule and. Standard of Review -.
T17 A directed verdict is reviewed de novo. Bonidy v. Vail Valley Cir. for Aesthetic Dentistry, P.C., 186 P.3d 80, 82 (Colo.App.2008). It should be entered only when no reasonable juror would conclude that the evidence presented or resulting inferences could support a verdict against the moving party. Thyssenkrupp Sofway, Inc. v. Hyland Hills Parks & Recreation Dist., 271 P.3d 587, 590 (Colo.App.2011), The evidence must be considered in the light most favorable to the nonmoving party. Id.
B. Inverse Condemnation
%18 The government cannot take private property for public or private use without just compensation. Colo. Const. art. II, § 15.[2] Inverse condemnation is a claim for relief against a regulatory taking, See Animas Valley Sand and Gravel, Inc. v. Board of County Comm'rs, 38 P.3d 59, 63 (Colo.2001). Such a taking occurs when a government deprives a private property owner of the use of land through application of its laws or regulations. Id. ("extensive. regulatory interference warrants compensation"). An owner can prove inverse condemnation by showing either a per se taking or a taking under a fact-specific inquiry, Id. at 65 (adopting the test from Palazzolo v. Rhode Island, 533 U.S. 606; 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001)). n
119 A per se taking occturs when a regulation affecting private property "does not substantially advance légitimate state interests," or when a regulation "denies an owner economically viable use 'of his land." Id. at 64 (quoting Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1016, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)). However, because reasonable zoning and land use limitations are a. proper exercise of police power, such restrictions will constitute a taking only. if they do not "substantially advance legitimate state interests or if [they] prevent[ ] economically viable use of the property." . Van Sickle v. Boyes, 797 P.2d 1267, 1271-72 (Colo.1990) (holding that application of a safety code to plaintiff's building was not a taking); National Adver. Co. v. Board of Adjustment (Zoning) of City & County of Denver, 800 P.2d 1349, 1351 (Colo.App,1990) (holding that a reasonable regulation requiring a modification of plaintiff's property was not a taking when it did not foreclose all reasonable use of the property); see also Penn Central Transp. Co. v. New York City, 438 U.S. 104, 138, 98 S.Ct. 2646 57 L.Ed.2d 631 (1978).
120 Absent a per se taking, a property owner may still prove a regulatory taking under a, fact-specific inquiry. . Such a taking occurs.if the property "retains more than a de minimis value but, when its diminished economic value is considered in connection with other factors, the property ef-fectlvely has been taken, from its owner." Animas Valley Sand and G'ra'vel, 38 P.3d at 66. A court may consider the economic effect of the regulations and their impact on investment-backed expectations. See id. at 66-67 (remanding for a new trial to determine economic impact of county land use plan on plaintiff's mining operation separate from the impacts of state and federal regulations and to determine whether plan affected plaintiff's reasonable investment-backed expectations for expandmg mmmg operatlons on its property)
121 Here, plamtlffs asserted that the County interpreted various building code provisions, in amanner that effected a regulatory taking. Specifically, they argued that a taking occurred because the County was not justified in: (1) finding that their septic system failed to comply with the regulations, (2) requiring them to post a bond covering the cost of modifying the system, and (8) requiring them to post a bond to cover the cost of wetlands remediation.
¶ 22 The trial court found that no regulatory taking had occurred because the County's regulations served a legitimate purpose, the *718 regulations were reasonably applied to plaintiffs, and that application did not deny them an economically viable use of their property. The County's septic system regulations were reasonable and contributed to the legitimate public purpose of protecting groundwater and adjoining properties from contamination: Moreover, these regulations were clear and had been incorporated into plaintiffs' approved septic system plan, as obtained by the prior owner of their property.
¶ 23 The court further found that the septic system installed by plaintiffs did not conform to the regulations or the approved building plan. Specifically, the septic tank was too small and they never installed the required subsurface drain. When the County asked them to 'post a bond for the cost of septic system modifications as a condition of authorizing a temporary certificate of oceu-paney, it was merely attempting to hold them to the requirements of the building code.
¶ 24 Likewise, the court found a legitimate policy reason for the County's insistence on a bond to cover federally protected wetlands mitigation because wetlands operate to filter water, Plaintiffs argued that the County did not have jurisdiction over the wetlands; rather, the U.S. Army Corps of Engineers (USACE) should have insisted on wetlands mitigation, if any was required. They asserted that the USACE would not have required such a bond. But because they offered no proof of the USACE's position, the court found that the bond requirement for wetlands mitigation was reasonable.
¶ 25 Finally, the court found that the bond requirement did not deprive plaintiffs of an economically viable use of their property. The property was valued at over $800,000; and the total bond requirement for the septic system and wetlands mitigation was only $16,000. |
¶26 The record does not show that the County's actions resulted in a regulatory taking,. No per se taking occurred because the County's regulations served a legitimate purpose and the regulations did not deprive plaintiffs of all economically viable use of their property. See Amimas Valley Sand and Gravel, 88 P.8d at 64.
¶ 27 The record also does not show a taking under a fact-specific inquiry because the economic impact of the regulations was minor compared to the value of the property. Further, plaintiffs failed to prove an adverse impact on their investment-backed expectations because before acquiring the property they had an approved septic system plan that conformed to County regulations, but did not follow it. See id. at 66-67.
¶ 28 Accordingly, the trial court did not err in entering a directed verdict in favor of the County on the inverse condemnation claim.
C. Section 1983 Claim
%29 The second amended complaint alleged that the County "engaged in a series of pretextual limitations and requirements as purported conditions to the issuance of the certificate of occupancy" and "imposed artificial, improper and contrived reasons for denying ... the issuance of the certificate of occupancy," which constituted discrimination based on sexual orientation in violation of section 1983. In the trial management order, plaintiffs stated that the County's requirements were unreasonable and differed from requirements imposed on similarly situated heterosexual homeowners in the following four ways: [3]
® Plaintiffs were required to post a cash bond for the septic system and wetlands mitigation work as a condition of obtaining even a temporary certificate of occu-paney ("TCO"), ...
® The County required Plaintiffs to submit a wetlands mitigation plan for an extremely minor wetlands disturbance as a , condition of obtaining a TCO....
e When Plaintiffs submitted a bid from their contractor as to the cost of the work to be completed for purposes of the bond amount, [Summit County's environmental health manager] disregarded the *719 bid and undertook to obtain his own bids on which to base the bond amount. The bond initially required from Plaintiffs was more than double the amount of the bond from their contractor. The County was unable to identify a single other instance in which the County took it - upon itself to solicit bids when one had been provided by the homeowner's own contractor....
® In every instance the County had discretion, the County exercised that discretion in a manner to hinder or delay Plaintiffs from obtaining their CO....
¶30 In ruling on the County's directed verdiet motion, the trial court held that the diseriminatory actions plaintiffs alleged were discrete and analyzed each of them separately. Then the court entered a directed verdict in the County's favor on three of these four challenged actions, allowing only the bond requirement for the septic system to go to the jury. It explained that plaintiffs had not presented sufficient evidence of similar comparators, even when taken in the light most favorable to them, that could have established an equal protection claim.
¶ 81 C.R.C.P. 50 provides:
A party may move for a directed verdict at the close of the evidence offered by an opponent or at the close of all the evidence. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts.
A motion for a directed verdict shall state the specific grounds therefor,. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
¶ 32 Plaintiffs argue that the court erred in analyzing the County's conduct as discrete actions, rather than as a pattern of discriminatory conduct. Neither party has cited any authority, nor have we found any in Colorado, authorizing a trial court to grant a partial - directed verdict by parsing the evidence as the court did here.
¶ 83 The reference to "partial directed verdict" in Gordon v. Boyles, 9 P.3d 1106, 1113 n. 7 (Colo.2000), is dicta. Further, the defamation claim that was dismissed on directed verdict could not suceeed "against Boyles on the element of Boyles's actual knowledge or réckless disregard for the truth of his statements about Gordon. See CJI-Civ. 4th 22:2 (1998)." Id. Thus, the trial court had no reason to address any other elements of a defamation claim in dwectlng a verdiet on that claim. [4]
¶34 Here, in contrast, the trial court allowed the jury to decide the section 1983 claim, but foreclosed the jury from considering three disputed actions within that claim. Unlike in Gordon, none of the three actions was an essential element of the section 1983 claim.[5]
¶ 35 The County relies on Price-Cornelison v. Brooks, 524 F.3d 1103 (10th Cir.2008), and Barney v. Pulsipher, 148 F.3d 1299 (10th Cir.1998). These cases are inapposite because they involve appellate review of section 1983 claims in different contexts than the case at bar. <
*720 eIn Price-Cornelison, the district court had dismissed the case because the defendant was entitled to sovereign immunity. The court of appeals examined each of the defendant's actions to decide whether the requirements for immunity were met, It concluded that as to one act, immunity was appropriate, but as to another act, it was not.
e In Barney, the court of appeals upheld summary judgment against the plaintiffs on their section 1988 equal protection claim. The court looked separately at assertions that the female plaintiffs had been afforded less access to programs than male prisoners and given harsher sentences than male prisoners who engaged in similar misconduct.
¶ 36 Thus, to uphold the rulings below, the appellate courts. had to examine each ground that could have required a different outcome. The defendant in Price-Cornelison would not have been entitled to dismissal based on immunity unless both of its challenged actions satisfied the requirements for immunity. Likewise, the summary judgment in Barney could not be upheld unless the plaintiffs had failed to raise a disputed issue of material fact as to discrimination in either programs or sentencing. >
137 In contrast, at the directed verdict stage, the trial court's role is not separately weighing different aspects of the evidence offered to support a single claim against a single defendant. See Criss v. Angelus Hosp. Ass'n of Los Angeles, 13 Cal. App.2d 412, 415, 56 P.2d 1274, 1275 (1986) ("If the several acts of negligence had been separately pleaded in separate causes of action, a motion for nonsuit or a directed verdict on the first cause of action for the first alleged negligence act ... [would have been] granted."). Rather, the court's function is deciding whether, as to that claim, the totality of the evidence would permit a reasonable jury to return a verdict.against that defendant. See Denver and Rio Grande Western RR. Co. v. Forster, 773 P.2d 612, 614 (Colo. App.1989) ("Likewise, the totality of the evidence concérning negligence by the Forsters could not sustain the granting of the Railroad's motion for directed verdict.").
$38 The language of CG.R.C.P. 50 does not empower -a trial court to parse evidence presented in support of a single claim against a single defendant by granting a partial directed verdict on that claim and then instructing the jury to consider only a portion of the evidence presented in support of that claim. - Such actions are contrary to the claim-by-claim approach to litigation ere-ated by the Rules of Civil Procedure. ..
¶ 39 This approach derives from the "General Rules of Pleading" described in C.R.C.P. 8(a), "Claims for Relief A pleading which sets forth a claim for a relief...." See also CRCP. 54(G) ("the court may direct the entry of a final judgment as to one or more but fewer than all of the claims"). Rules dealing with dismissal also reflect this ap: proach, Seq, eg., C.R.C.P. 12(b) ("failure of the pleading to state a claim upon which relief can be granted"); C.R.C.P. 41(b)(1) ("a defendant may move for dismissal of an action or of any claim against him").
¶ 40 In contrast, when a procedure permits a single claim to be parsed, the rules .so provide, See C.R.C.P. 56(a) (permitting party "seeking to recover upon a claim" to seek summary judgment "upon all or any part thereof"); C.R.C.P. 59(c)(1) (empowering trial court, on its own initiative, to "Order a new trial of all or part of the issues."); cf. C.R.C.P, 56(h) (trial court may enter an order deciding a question of law "at any time after the last required pleading"). But C.R.C.P. 50 does not provide for a partial directed verdict within a single claim.
¶ 41 The trial court's ruling is also problematic because plaintiffs' single discrimination claim encompassed a series of closely related actions arising from building regulations adopted, interpreted, and enforced by the County. These actions involved the same owners, the same building, the same primary actor for the County, and overlapping facts. However, the trial court's ruling and instructions foreclosed the jury from considering that the County's dealings with plaintiffs, in their totality, showed a discriminatory motive. See Beasley v. Potter, 493 F.Supp. 1059, 1069 "(W.D.Mich.1980) ("The courts have frequently noted the difficult and sensi *721 tive task of ascertaining the intent behind official actions. By its very nature a racially discriminatory purpose for challenged acts is unlikely to be expressed on the record. Discriminatory intent, if it exists, necessarily must be inferred by the court from the totality of the evidence, whether direct, indirect, or ciretmstantial," ' (citation omitted)); see also Inmates of Nebraska Penal & Correctional Complex v. Greemholtzs, 567 F.2d 1368, 1375 (8th Cir.1977) ("[Aln invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the challenged conduct bears more heavily upon one race than another.").
¶ 42 The dispute over the bonds required by the County to repair the septic system and to remediate damage to the wetlands is illustrative, The County asserted that these issues were connected because the wetlands would filter water from the septic system. Plaintiffs argued, and the evidence would have permitted the jury to conclude, that as to the bond for wetlands remediation:
® Plaintiffs submitted a bid from their contractor;
@The County unilaterally solicited other bids; to @The County set a higher bond based on one of these bids; and |
@The County could not identify another bonding dispute in which it had sought bids after the owner had submitted a bid.
¶48 Hence, from the County's unprecedented action, the jury could have inferred discriminatory intent by the County official who also made. other decisions concerning plaintiffs. That inference would not be precluded because plaintiffs failed to identify another homeowner who had been required to post a bond concerning damaged wetlands. But the court prevented the jury from considering how this action might be informative of the official's intent in his other decisions affecting plaintiffs. See Umited States v. Yonkers Bd. of Educ., 837 F.2d 1181, 1226-27 (2d Cir.1987) ("intent to discriminate may be inferred from evidence of such facts" including "departures from the normal procedural or substantive standards, contemporary statements by members of the decisionmak-ing body, and the totality of the cireum-stances"); Buchanan v. City of Bolivar, Tenn., 99 F.3d 1352, 1356 (6th Cir.1996) ("To establish a genuine issue of material fact that the defendants intentionally discriminated against plaintiff's son ... proof of discriminatory intent is critical.").
¶ 44 This interpretation of C.R.C.P. 50 does not preclude trial courts from assisting the jury in examining multiple actions within a single claim. See, eg., Belt.v. St. Louis, San Francisco Ry. Co., 195 F.2d 241, 242 (10th Cir.1952) ("Overruling a motion of the defendant for a directed verdict, the trial court submitted the case to the jury, painstakingly instructing if that two separate and distinct acts of negligence were in issue."). For example, on remand the court could instruct the jury that to find for plaintiffs on any one of the discriminatory acts alleged, as to that act plaintiffs must have identified a similarly situated heterosexual homeowner, whom the County treated differently than it treated plaintiffs, and that a factor in the County's decision to treat plaintiffs less favorably was their sexual orientation..
¶ 45 Accordingly, the partial directed verdict on the single section 1988 claim was error, and this claim must be retried on remand.
IV. Jury Instructions
¶ 46 Finally, plaintiffs contend the trial court erred in two of its instructions to the jury which, as indicated, limited the seope of the section 1983 claim. Although the court's instructions are a factor in our decision to remand for retrial of the section 1988 claim, we need not further address this contention. The instructions given to the jury following presentation of evidence at retrial must be based on that evidence and in the event of an appeal can be reviewed accordingly.
V. Conclusion
¶ 47 We conclude that the trial court did. not err in dismissing two of plaintiffs' claims under C.R.C.P. 8 and 12(b)(B), or in directing a verdict for the County on the inverse condemnation claim. However, we further conclude that the court misapplied C.R.C.P. 50 *722 in granting a partial directed verdict on three challenged actions within the equal protection claim. Therefore, the case is remanded for retrial of plaintiffs' section 1988 claim.
JUDGE LICHTENSTEIN concurs. ©
JUDGE. FOX concurs in part and dissents in part. -

. The County does not dispute that section 1983 encompasses an equal protection claim based on sexual orientation. See Windsor v. United States, 699 F.3d 169, 179 (2d Cir.2012) (cert. granted - U.S. - 133 S.Ct 786, 184 L.Ed.2d 527 (2012)).

. While this provision of the Colorado Constitution is very similar to the- takings clause of the Fifth Amendment to the U.S. Constitution, the Colorado takings clause is broader because it includes-damages to land. See Animas Valley Sand and Gravel, Inc. v. Board of County Comm'rs, 38 P.3d 59, 63 (Colo.2001). We analyze this issue under the Colorado Constitution.

. The trial court found that plaintiffs did not present sufficient evidence to bring a facial or as applied challenge to the County's policy of not providing building permits to multiple individuals unless they were married because they had received a permit after they advised the County that they were in a committed relationship. Plaintiffs do not appeal that decision.

. - Evans v. Webster, 832 P.2d 951, 956 (Colo.App.1991), also cited in the dissent, involved a single negligence claim against a- single defendant, in which the court held that the plaintiff's "tort suit against the defendant was barred by the Workers' Compensation Act." Because the bar constituted a complete defense, Evans does not support granting a partial directed verdict.

. Because a partial directed verdict on a category of damages or an affirmative defense does not parse the evidence within a single claim, we express no opinion on the propriety of such rulings. See, e.g., State Dep't of Transp. & Development v. Restructure Partners, LLC., 985 So.2d 212, 224 (La.Ct.App.2008) ("cost-to-cure" damages); Brackett v. Cartwright, 231 Ga.App. 536, 499 S.E.2d 905, 907 (1998) (statute of limitations affirmative defense). Hamilton v. Henderson, 260 Ga.App. 132, 579 S.E.2d 58, 59 (2003), cited by 'the dissent, is similar to cases directing a verdict on an affirmative defense, because the appellate court affirmed a directed verdict on comparative negligence, while allowing the jury to consider the negligence claim. _