2015 CO 56

**BOARD OF COUNTY COMMISSIONERS OF SUMMIT COUNTY, Petitioner**

v.

**Jason L. RODGERS and James R. Hazel, Respondents.**

Supreme Court Case No. 13SC404

Supreme Court of Colorado.

September 8, 2015

Attorneys for Petitioner: Berg Hill Greenleaf & Ruscitti LLP, Josh A. Marks, Melanie B. Lewis, Heidi C. Potter, Boulder, Colorado, Summit County Government, Jeffrey L. Huntley, Breckenridge, Colorado.

Attorneys for Respondents: Holley, Albertson & Polk, P.C., Dennis B. Polk, Heather S. Hodgson, Golden, Colorado.

Attorneys for Amicus Curiae Colorado Trial Lawyers Association: Rathod Mohamedbhai, LLC, Arash Jahanian, Matthew Cron, Austin M. Cohen, Siddhartha H. Rathod, Qusair Mohamedbhai, Denver, Colorado.

Attorneys for Amicus Curiae Colorado Defense Lawyers Association: Levy Wheeler Waters, P.C., Karen H. Wheeler, Matthew W. Hall, Charles C. Hall, Greenwood Village, CO.

JUSTICE EID delivered the Opinion of the Court.

¶ 1 Respondents Jason L. Rodgers and James R. Hazel ("Respondents") allege in

their 42 U.S.C. § 1983 claim that petitioner Summit County Board of County Commissioners ("the County") violated the Equal Protection Clause of the U.S. Constitution when it denied them a certificate of occupancy to their newly built home. The trial court issued partial directed verdicts against Respondents on three of the four allegedly discriminatory actions they identified in support of their claim. On appeal, the court of appeals reversed, concluding that C.R.C.P. 50 does not permit partial directed verdicts, and that the trial court improperly considered the County's actions as separate issues rather than as a pattern of discriminatory conduct. *Rodgers v. Bd. of Cnty. Comm'rs of Summit Cnty.*, 2013 COA 61, —— P.3d ——. Judge Fox dissented as to this part of the opinion. *Id.* at ¶ 63 (Fox, J., concurring in part and dissenting in part).

¶ 2 We now reverse. As to the court of appeals' first rationale, we begin with the observation that Rule 50 is closely tied to our summary judgment rule, C.R.C.P. 56, which permits partial summary judgments. Both rules share a common legal standard (judgment as a matter of law) and a common purpose (to streamline the litigation process). Accordingly, the two rules should be interpreted in tandem. We can find no convincing justification—and have been directed to none—for permitting partial summary judgments, but not partial directed verdicts. We also find persuasive the fact that the federal counterpart to our rule, Fed.R.Civ.P. 50, has been interpreted to permit partial directed verdicts. We therefore hold that the court of appeals erred in concluding that Rule 50 does not permit partial directed verdicts. We also disagree with the court of appeals' additional rationale that the trial court misunderstood the nature of Respondents' claim, as Respondents invited the trial court to consider the four allegedly discriminatory actions as separate discriminatory acts, rather than as a pattern of conduct. *See Hansen v. State Farm Mut. Auto. Ins. Co.*, 957 P.2d 1380, 1384 (Colo.1998) (court will not review errors alleged by a party responsible for the claimed error). We therefore reverse the

court of appeals' opinion in its entirety and remand the case for further proceedings consistent with this opinion.

**I.**

¶ 3 Respondents, a same-sex couple, purchased a piece of property in Breckenridge with the intent of building a four-bedroom, single-family home. Respondents built the home, but the County refused to grant them a certificate of occupancy. Respondents allege that in doing so, the County imposed a series of requirements that were not applied to other homeowners. The County contends that it refused to issue the permit because the home's septic system was deficient under the applicable regulation.

¶ 4 The County offered Respondents a temporary certificate of occupancy on the condition that they fix the septic system, mitigate wetlands damage that occurred during construction, and post a bond for the estimated cost of repairs to the septic system. Respondents were unable to comply with these conditions, however, and after the County refused to issue the certificate, the house was foreclosed upon. Respondents subsequently filed suit, initially alleging five claims for relief. At issue here is their claim under 42 U.S.C. § 1983 (2015), alleging that they were deprived of their rights to equal protection under the U.S. Constitution.

¶ 5 In their proposed trial management order, Respondents alleged that the County engaged in the following four discriminatory actions:

[1] [Respondents] were required to post a cash bond for the septic system and wetlands mitigation work as a condition of obtaining even a temporary certificate of occupancy ("TCO")....

[2] [Respondents were required] to submit a wetlands mitigation plan for an extremely minor wetlands disturbance as a condition of obtaining a TCO....

[3] When [Respondents] submitted a bid from their contractor as to the cost of the

work to be completed for purposes of the bond amount, the [County] disregarded the bid and undertook to obtain [its] own bids on which to base the bond amount. The bond initially required from [Respondents] was more than double the amount of the bond from their contractor. . . .

[4] In every instance [the County] had discretion, [it] exercised that discretion in a manner to hinder or delay [Respondents] from obtaining their [certificate of occupancy]. . . .

*Rodgers*, ¶ 29 (reciting Respondents' four allegations) (omissions in original). After evidence was presented at trial, the County moved for a directed verdict under C.R.C.P. 50, arguing that Respondents had not established a suitable comparator for the four alleged acts of discrimination. In response, Respondents' counsel did not object to the County's characterization of their claim as alleging four separate discriminatory acts, but rather asserted that Respondents had in fact presented evidence of a suitable comparator for each action. In addition, Respondents proposed jury instructions that instructed the jury to find for them if at least one of the actions was discriminatory. Each action was followed by the disjunction "or."[1] Analyzing each of the discrete issues separately, the trial court entered a directed verdict in favor of the County on three of the four allegedly discriminatory actions, allowing the jury to determine only whether the County acted with discriminatory intent when it required them to post a bond to cover repair costs to the septic system.[2]

¶ 6 Three separate instructions informed the jury that it could consider all the evidence presented at trial to determine whether the County acted with an intent to discriminate.[3] Additionally, Respondents' counsel urged the jury in closing argument to look at the entirety of the County's conduct to determine whether the County acted with a discriminatory purpose.[4]

1. Respondents proffered the following instruction to the trial court:

   In order to prevail on their claim, [Respondents] must prove, by a preponderance of the evidence, that in response to [Respondents'] efforts to obtain a certificate of occupancy for their Property:
   1. One or more County employee(s):
   a. Made decisions and/or applied the County's septic system (ISDS) regulations in a manner such that [Respondents] were treated differently than others [sic] applicants who were not a same-sex couple, but were otherwise similarly situated to [Respondents]; OR
   b. Made decisions and/or applied the County's grading regulations in a manner such that [Respondents] were treated differently than other applicants who were not a same-sex couple, but were otherwise similarly situated to [Respondents]; OR
   c. Made decisions and/or failed to follow its own policies with respect to the inadvertent wetlands disturbance on [Respondents'] Property, and as a result treated [Respondents] differently than other applicants who were not a same sex couple, but were otherwise similarly situated to [Respondents]; OR
   d. Made decisions and/or applied the County's bond requirements in such a manner that [Respondents] were treated differently than other applicants who were not a same-sex couple, but were otherwise similarly situated to [Respondents]; OR
   e. Made decisions and/or applied the County's requirements for issuance of a temporary certificate of occupancy ("TCO") or permanent certificate of occupancy ("CO") in such a manner that [Respondents] were treated differently than other applicants who were not a same-sex couple, but were otherwise similarly situated to [Respondents].

2. Instruction 3 instructed the jury that "[Respondents] must prove, by a preponderance of the evidence, that in response to [Respondents'] efforts to obtain a certificate of occupancy for their Property . . . [the County], in making the decision to condition the [Respondents'] receipt of a certificate of occupancy on their payment of a bond to cover the costs associated with the repairs to their septic system, treated [Respondents] more harshly than others. . . ."

3. Instruction 1 instructed the jury that "[Respondents] believe the County's decisions, taken as a whole, collectively establish that the County treated them in a discriminatory manner." Instruction 9 instructed the jury that a "discriminatory purpose may be inferred from the totality of the relevant facts." Instruction 26 instructed the jury that in "determining whether the County intentionally discriminated against [Respondents] on the basis of their sexual orientation, you may consider all the evidence presented in this case."

4. Specifically, Respondents argued during closing that "no human being ever comes before you and says, I discriminated against somebody. We're never going to have anybody say that. So

¶ 7 The jury returned a verdict in favor of the County, and Respondents subsequently appealed. A majority of the court of appeals reversed the trial court, holding that the trial court erred in granting partial directed verdicts. First, the court of appeals concluded that the Colorado Rules of Civil Procedure apply a "claim-by-claim approach" to litigation and that Rule 50 does not permit the trial court to grant a "partial directed verdict by parsing the evidence." *Rodgers,* ¶¶ 32, 38. The court of appeals also found the trial court's ruling "problematic" because the ruling misperceived Respondents' claim as encompassing separate acts rather than as a pattern of conduct and thus "foreclosed the jury from considering that the County's dealings with [Respondents], in their totality, showed a discriminatory motive." *Id.* at ¶ 41.

¶ 8 Judge Fox dissented from this portion of the opinion, concluding that (1) "neither the language of C.R.C.P. 50 nor the limited authority on the subject preclude[d] ... the trial court['s]" directed verdict on part of a claim, and (2) Respondents presented "separate instances of discrimination to support the section 1983 claim," rather than relying on a pattern of discrimination. *Id.* at ¶ 64 (Fox, J., concurring in part and dissenting in part). The County then petitioned this court for review, which we granted.[5]

## II.

¶ 9 First, we consider the court of appeals' holding that Rule 50 does not authorize a trial court to issue a partial directed verdict, and that therefore the trial court in this instance erred in directing a verdict on three of the four allegedly discriminatory actions set forth by Respondents in support of their section 1983 claim. Second, we consider the court's additional rationale that the trial court improperly treated Respondents' section 1983 claim as alleging separate acts of discrimination, rather than a pattern of discrimination.

### A.

¶ 10 The court of appeals, sua sponte, concluded that the trial court lacked the authority to issue partial directed verdicts as to part of Respondents' section 1983 claim—an argument Respondents press before us. We disagree.

¶ 11 The court of appeals based its conclusion on what it termed the "claim-by-claim approach to litigation" adopted by the Colorado Rules of Civil Procedure. *Rodgers,* ¶ 38. More specifically, the appellate court relied on the fact that a number of rules refer to "claims," *see, e.g.,* C.R.C.P. 8(a) (discussing a "pleading which sets forth a *claim* for [ ] relief") (emphasis added); C.R.C.P. 54(b) ("[T]he court may direct the entry of a final judgment as to one or more but fewer than all of the *claims....*") (emphasis added), and that in certain circumstances the rules permit "a single claim to be parsed," *see, e.g.,* C.R.C.P. 56(a) (trial court may award summary judgment "upon all or any part" of a claim); C.R.C.P. 59(c)(1) (trial court may order a new trial for "all or part of the issues"). *Rodgers,* at ¶¶ 39–40. The court reasoned that because Fed.R.Civ.P. 50(a) does not expressly state that consideration of part of a claim is permitted, a partial directed verdict must not be allowed under the rules. *Id.* at ¶ 40.

¶ 12 We reject the appellate court's reasoning because it rests on the flawed premise that the rules adopt a "claim-by-claim" approach to litigation. As the court's survey of the rules demonstrates, some rules refer to claims, others to parts of claims, and still others—like Rule 50—are simply silent on the matter. Indeed, Rule 50 does not refer

you have to look at all of this person's conduct to see what's going on." During closing, Respondents also urged the jury that "[i]nstruction nine tells you that a discriminatory purpose can be inferred from the totality of the relevant facts. Look at the totality of these facts."

5. We granted certiorari to review the following issue: Whether the court of appeals erred by holding that under C.R.C.P. 50, a trial court cannot direct a verdict as to some but not all issues within a single claim against a single defendant.

to claims or to parts of claims, but rather permits a party to "move for a directed verdict at the close of the evidence offered by an opponent or at the close of all the evidence." [6] Based on the diversity of phrasing in the rules, we find no overall "approach" regarding the disposition of claims, in full or in part, from which exceptions must be expressly made. Accordingly, we reject the court of appeals' rationale that Rule 50's silence on the matter precludes a partial directed verdict.

¶ 13 Instead, we look to the closely related Fed.R.Civ.P. 56—governing summary judgment—for guidance. Under Rule 56, a trial court may issue summary judgment "upon all or any part" of a claim, if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(a)–(c). In *Kaiser Foundation Health Plan of Colorado v. Sharp*, 741 P.2d 714, 718 n.6 (Colo.1987), we observed that Rules 50 and 56 are largely analogous, in that the "essence of both motions is that there is no genuine issue of material fact to be resolved by the trier of facts, and that the movant is entitled to judgment on the law applicable to the established facts." (quoting J. Moore, *Moore's Federal Practice* ¶ 56.04[2] (1987)). The primary difference, we noted, is the timing of the motion, the former being made during trial, the latter before. *Id.* Despite differences in timing, summary judgment and directed verdict are both "conceived as [ ] de-

vice[s] to save the time and trouble involved in a lengthy jury determination when there is a clear insufficiency of evidence on one side of the case or the other." 9B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2521 (3d ed.2008) (discussing the history and purpose behind Fed.R.Civ.P. 50(a)).

¶ 14 Given that both summary judgment and directed verdict employ the same standard (judgment as a matter of law) and share a purpose (to streamline the litigation process), it makes little sense for judgment as to issues to be permitted prior to trial on summary judgment but not after the presentation of evidence at trial. And, in fact, we can find no convincing justification—and have been directed to none—for permitting partial summary judgments, but not partial directed verdicts.

¶ 15 Moreover, the federal summary judgment and directed verdict rules have developed in a parallel fashion to permit partial judgment in both instances. We find this development instructive in determining whether Rule 50 should be interpreted to permit partial directed verdicts. *See Garrigan v. Bowen*, 243 P.3d 231, 235 (Colo.2010) (looking to federal rule for guidance in interpreting analogous state procedural rule). Until 1990, the language of Federal Rule 50(a) closely mirrored that of the Colorado rule, referring simply to a "party who moves for a directed verdict." [7] In 1991, the federal rule jettisoned the directed verdict terminol-

---

**6.** The entirety of C.R.C.P. 50 is as follows:

A party may move for a directed verdict at the close of the evidence offered by an opponent or at the close of all the evidence. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

**7.** a) MOTION FOR DIRECTED VERDICT: WHEN MADE; EFFECT. A party who moves

for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

Fed.R.Civ.P. 50(a) (1990) (amended Apr. 30, 1991, eff. Dec. 1, 1991).

ogy as "misleading" and "anachronis[tic]." Fed.R.Civ.P. 50 advisory committee's note to subdivision (a) (1991). Instead, the federal rule adopted the terminology of "judgment as a matter of law" from the federal summary judgment rule, Rule 56, and in doing so "call[ed] attention to the relationship between the two rules" and "the common identity of two motions made at different times in the proceeding." *Id.* In making this change in terminology, the federal rules expressly recognized that Rules 50 and 56 share a standard—the point we had made in *Kaiser.* 741 P.2d at 718 n.6. Thus, the advisory committee reasoned, if it is apparent prior to trial that a party cannot succeed on an issue as a matter of law, a court may enter summary judgment under Federal Rule 56, or it may "perform its duty to enter judgment as a matter of law [under Federal Rule 50] at any time during the trial, as soon as it is apparent that either party is unable to carry a burden of proof that is essential to that party's case." Fed.R.Civ.P. 50 advisory committee's note to subdivision (a) (1991). The duty of a trial court to render judgment as a matter of law under the appropriate circumstances accordingly extends from prior to trial through the trial itself.

¶ 16 The revised federal rule also makes clear that this continuing duty parallels Federal Rule 56 in another way—by applying to the resolution of "an issue" as a matter of law against a party. Federal Rule 50 now reads:

> If a party has been fully heard *on an issue* during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may ... *resolve the issue* against the party; and ... grant a motion for judgment as a matter of law against the party....

Fed.R.Civ.P. 50(a) (emphasis added). Important for this case, the advisory notes take pains to explain that the language of "judgment as a matter of law" was "not intended to change the existing standards under which 'directed verdicts' could be granted." Fed. R.Civ.P. 50 advisory committee's note to subdivision (a) (1993).

¶ 17 The only conclusion that can be drawn from this commentary is that the prior version of Federal Rule 50, which was substantially similar to the Colorado rule as it now reads, already permitted a directed verdict on all or part of a claim. And, in fact, this conclusion is supported by the federal case law. *See, e.g., Transcon. Bus Sys., Inc. v. Taylor,* 265 F.2d 913, 914 (10th Cir.1959) (discussing standard for directed verdict on "insufficiency of the evidence to take the case to the jury on the *crucial issue or issues of fact*") (emphasis added). In sum, the revised version of the federal rule simply made express the authority to award a directed verdict on a particular issue—authority that had been contained in the rule all along.

¶ 18 We find this development in the federal rules to be persuasive evidence that our rule should be interpreted to permit a trial court to direct a verdict on a claim in whole or in part. Like the prior version of its federal counterpart, our Rule 50 refers to a party moving for a directed verdict and does not expressly state whether this authority applies to claims in whole or in part. But also like its federal counterpart, Rule 50 implicitly authorizes a trial court to issue a directed verdict regarding claims in whole or in part. As noted above, both in Colorado and under the federal rules, Rule 50 is closely tied to Rule 56—sharing a legal standard and a common purpose. Therefore, the two rules should be interpreted in tandem to permit partial directed verdicts. Indeed, our previous discussions of the directed verdict have assumed that Rule 50 enables trial courts to partially decide claims or issues. *See Paine, Webber, Jackson & Curtis, Inc. v. Adams,* 718 P.2d 508, 518 (Colo.1986) (discussing when a trial court "should take an *issue* from the jury" by issuing a directed verdict) (emphasis added); *Observatory Corp. v. Daly,* 780 P.2d 462, 466 (Colo.1989) (discussing a trial court's decision to direct a verdict on one theory of liability on the basis that plaintiff did not prove an essential element of his case). Moreover, without the ability to file a motion for a partial directed verdict, a party would be unable to preserve

for appeal an issue raised in a motion for partial summary judgment by filing a motion for directed verdict. *See Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1251 (Colo. 1996) (in order to preserve an issue raised in a summary judgment motion for appeal, party must move for directed verdict under Rule 50 or judgment notwithstanding the verdict under C.R.C.P. 59).

¶ 19 Accordingly, we hold that Rule 50 permits a trial court to direct a verdict as to some but not all of the issues presented in a claim, and we disapprove of the court of appeals' rationale in this regard.

### B.

¶ 20 Respondents also argue that the trial court's partial directed verdict rulings reflected a misunderstanding of their section 1983 claim. According to Respondents, their claim is not that each of the four decisions constituted a separate act of discrimination. Instead, they argue that the County's actions, when viewed in their entirety, constituted a pattern of discrimination in violation of their right to equal protection under the U.S. Constitution. Respondents argue that the trial court's decision to instruct the jury to consider whether one action (requiring a bond for the septic system repairs) constituted discrimination prevented the jury from considering their claim as a whole. The court of appeals adopted a version of this argument when it concluded that the trial court improperly treated Respondents' claim as alleging separate acts of discrimination rather than a pattern, thereby "foreclos[ing] the jury from considering that the County's dealings with plaintiffs, in their totality, showed a discriminatory motive." *Rodgers*, ¶ 41. We again disagree.

¶ 21 For our purposes today, we need not, and do not, pass on any aspect of Respondents' equal protection claim. The only question before us is whether the trial court improperly separated Respondents' pattern of discrimination claim into four separate decisions by the County. We hold that any improper categorization was invited by Respondents, and that therefore the argument fails. *Hansen v. State Farm Mut. Auto. Ins. Co.*, 957 P.2d 1380, 1384 (Colo.1998) (noting that court will not "review errors alleged by a party who is responsible for the claimed error").

¶ 22 Our review of the record demonstrates the following: respondents' proposed case management order alleged that the County engaged in four discriminatory actions. After the presentation of evidence, the County moved for a directed verdict, arguing that Respondents had not established a suitable comparator for the four alleged acts of discrimination. Respondents did not respond by saying the County had mischaracterized their section 1983 claim; instead, they asserted that they had in fact presented evidence of a suitable comparator for each allegedly discriminatory action. In addition, Respondents proposed jury instructions that instructed the jury to find for them if at least one of the actions was discriminatory. Each action was followed by the disjunction "or."

¶ 23 The repeated use of "or" in the proffered jury instruction indicates that any one of the alleged actions would be sufficient to establish that Respondents were deprived of equal protection—contrary to the argument pressed by Respondents that the County's actions should be considered as a whole in order to establish a pattern. Thus, when the trial court determined that Respondents had failed to present sufficient evidence of a comparator regarding three of the four allegedly discriminatory actions—and, as a result, instructed the jury to consider whether they proved their claim by showing one of the actions (regarding the bond to cover costs associated with the septic system) was discriminatory—it treated the section 1983 claim as it was invited to by Respondents.

¶ 24 We also reject the court of appeals' conclusion that the trial court prevented the jury from considering all of the evidence regarding the County's alleged discriminatory motive. The jury was instructed three

times that it could consider all of the evidence to determine whether the County's decisions were motivated by discriminatory intent. Additionally, during closing argument, Respondents' counsel urged the jury to look at the entirety of the County's conduct to determine whether the County acted with a discriminatory purpose. The court of appeals thus erred in suggesting that the trial court's partial directed verdicts somehow precluded the jury from considering all of the evidence regarding an allegedly discriminatory motive. Accordingly, we reject the court of appeals' additional rationale as well.

### III.

¶ 25 We reverse the court of appeals' opinion in its entirety and remand the case for further proceedings consistent with this opinion.